G. C. HUSTON, Respondent, v. QUINCY, OMAHA & KANSAS CITY RAILROAD COMPANY, Appellant.

**Kansas City Court of Appeals, February 17, 1908.**

1. MASTER AND SERVANT: Defective Pile Driver: Proximate Cause: Evidence: Jury. *Held*, the facts in the record justify the court in submitting to the jury the question of the negligence of defendant in operating a pile driver with alleged defective shoe, and also the negligence of a fellow-servant in giving the signal to lower the hammer while plaintiff was in a position of danger, since the latter act was the approximate cause of the injury.

2. ———: ———: Fellow-Servant: Operating Railroad: Statutory Construction. *Held*, that a pile driver crew in putting in a bridge in a railroad track were "operating such railroad" within the meaning of section 2873, Revised Statutes 1899.

3. ———: ———: Jury. The master must exercise reasonable care to provide the servant with reasonably safe appliances and must not increase the natural hazard of the servant's employment; and the failure to remedy a defect in a pile driver was such as to send the question of negligence to the jury.

4. ———: ———: Assumption of Risk. The doctrine of assumption of risk has no application to the facts in this record.

5. ———: ———: Contributory Negligence: Jury. On the facts the question of contributory negligence of plaintiff in placing his hand on the head of a pile and failing to hear a signal, was for the jury.

6. ———: ———: Toggle: Instructions. Instructions submitting to the jury the question of negligence in failure of defendant to maintain and use a toggle on a pile driver is held prejudicial error, since such failure could in no wise have contributed to the injury.

Appeal from Grundy Circuit Court.—*Hon. George W. Wanamaker*, Judge.

REVERSED AND REMANDED.

*J. G. Trimble* and *Hall & Hall* for appellant.

(1) The court erred in giving plaintiff's instruction 2, submitting the question of negligence because of the failure to have a toggle on the pile driver. Instructions must be based on the evidence as well as the pleadings and there being no evidence to support such an instruction it was error to give it. Chitty v. Railroad, 148 Mo. 73; Roscoe v. Railroad (Mo.), 101 S. W. 32; Jordan v. Transit Co. (Mo.), 101 S. W. 14; Behen v. Transit Co., 186 Mo. 442; Willis v. Power Co., 111 Mo. App. 587; Chambers v. Railroad, 101 Mo. App. 609; Meily v. Railroad, 107 Mo. App. 466; Garvin v. Railroad, 100 Mo. App. 617. (2) The court erred in giving plaintiff's instruction 3, for it authorizes the jury to find for plaintiff if he was injured by any negligent acts of the bellman Berry, whether such acts were pleaded or proved. The instruction is clearly erroneous because it did not confine the jury to the negligent acts alleged in the petition and proved by the evidence. Politowitz v. Tel. Co., 115 Mo. App. 57; Lowenstein v. Railroad, 110 Mo. App. 686; Landers v. Railroad, 114 Mo. 655; Garvin v. Railroad, 100 Mo. App. 617; McManamee v. Railroad, 135 Mo. 440; Waldhier v. Railroad, 71 Mo. 514; Campbell v. Transit Co., — Mo. App. — , 99 S. W. 58; Fisher v. Lead Co., 156 Mo. 479, 495. (4) The court erred in refusing to give defendant's instruction in the nature of a demurrer to the evidence. The plaintiff was guilty of contributory negligence and is not entitled to recover. He might have placed his hand in a perfectly safe place if he had to take hold of something to steady himself, but he chose to put his hand in an unsafe and dangerous place and must bear the consequences of his choice. Pohlmann v. Car & Foundry Co., — Mo. App. —, 100 S. W. 544; Alcorn v. Railroad, 108 Mo. 81; McGahan v. Transit Co., 100 S. W. 601, — Mo. — ; Eliot v. Railroad, 102 S. W. 532;

129 App—37

537, — Mo. — ; McCarty v. Hotel Co., 144 Mo. 397; Smith v. Box Co., 193 Mo. 715 and cases cited; Doerr v. Brewing Assn., 176 Mo. 547, 556; Kappes v. Shoe Co., 116 Mo. App. 154; Chaney v. Railroad, 176 Mo. 598, 605; Zentz v. Chappell, 103 Mo. App. 208; Fore v. Railroad, 114 Mo. App. 551; Loeffler v. Railroad, 96 Mo. 267; Evans v. Railroad, 178 Mo. 514. (5) There was a total failure of proof of any of the negligence charged and the jury should have been instructed to return a verdict for defendant. Hamilton v. Railroad, — Mo. App. — , 100 S. W. 671, and cases cited; Moore v. Railroad, 176 Mo. 542; Watson v. Railroad, 133 Mo. 246; Smith v. Box Co., 193 Mo. 739; Kappes v. Shoe Co., 116 Mo. App. 154; Saxton v. Railroad, 98 Mo. App. 494; Poindexter v. Paper Co., 84 Mo. App. 352; Hudson v. Railroad, 101 Mo. 34; Wheat v. St. Louis, 179 Mo. 582; Clancy v. Transit Co., 192 Mo. 658. (6) The plaintiff had no right to permit his mind to become so engrossed in what he was doing as to become heedless of his danger. Clancy v. Transit Co., 192 Mo. 652 and cases cited; Wheat v. St. Louis, 179 Mo. 580; Davis v. Railroad, 157 Mo. 6.

*Platt Hubbell* and *George Hubbell* for respondent.

(1) Plaintiff's second instruction is correct. (2) Plaintiff's third instruction is correct. Browning v. Railroad, 118 Mo. App. 449; Buckalew v. Railroad, 107 Mo. App. 575; Orendorff v. Railroad, 92 S. W. R. 148. (3) Defendant's first instruction has been expressly condemned by the Supreme Court. Johnson v. Railroad, 173 Mo. 318. (4) The demurrer to the evidence was properly overruled. 5 Thompson on Negligence, sec. 5758, p. 236; McPhee v. Scully, 39 N. E. 1008, 168 Mass. 216; McAlpine v. Laydon, 46 Pac. 866, 115 Cal. 68; Garaci v. Const. Co., — Mo. App. — , 102 S. W. 594; Nophler v. Woodward, 200 Mo. 186; Charlton v. Railroad, 200 Mo. 433; Dean v. Railroad, 199 Mo. 410;

Phippin v. Railroad, 196 Mo. 321; Hollweg v. Telephone Co., 195 Mo. 149. (7) There is only one cause of action stated in the petition, proved by the evidence, and submitted to the jury—that is, that the defendant negligently injured the plaintiff. The fact that there were three different acts of negligence alleged, giving rise to the cause of action, proved, submitted to the jury and found by them, does not constitute three causes of action. White v. Railroad, 101 S. W. 20. The plaintiff had a right to submit to the jury all three acts of negligence —since if the jury found for plaintiff as to either, or all, of the acts of negligence charged, he was entitled to their verdict, a general verdict was proper. Rinard v. Railroad, 164 Mo. 270; Shuler v. Railroad, 87 Mo. App. 618.

JOHNSON, J.—Plaintiff sued for damages for personal injuries alleged to have been caused by the negligence of defendant and recovered judgment in the circuit court. Defendant brought the case here by appeal and presents a number of grounds for a reversal of the judgment, among them the contention that its request for a peremptory instruction in the nature of a demurrer to the evidence should have been granted.

Plaintiff was a member of a crew employed by defendant, a railroad company, in the operation of a steam pile driving machine. His principal duty was to cook for the crew but when not thus employed, he was required to work as a laborer on or about the machine. On the day of his injury, March 10, 1906, when his work of serving the noon meal was finished, he was directed by the foreman to work on the pile driver. A pile had just been raised by the machine and stood between the leads in a position where hand power was required to shift its top to a place where it could be covered by the hood, preparatory to being driven by the hammer. The machine had an ordinary flat car for its base. The

boiler and engine were at one end of the car and the leads were at the end of a supporting frame which projected a few feet beyond the other end of the car. The leads consisted of two parallel uprights about thirty-five feet high, set about two feet apart and connected at the top by a cross piece. The hammer, an iron block weighing about 2,700 pounds, was fitted to the leads in a way to slide upward and downward between them. It was suspended by a rope which ran over a pulley wheel on the top of the V cross piece and then downward to a revolving drum operated by power from the engine. By means of a ratchet wheel and dog, the drum could be held immovable at the will of the engineer and the hammer thereby held stationary at any point in its course and, by using a friction clutch, with which the drum was provided, when the dog was released, the rate of speed of the hammer in its descent could be controlled by the engineer even to the extent of stopping the hammer altogether. The clutch consisted of a fixed wheel having its periphery beveled and a receiving socket corresponding thereto, so that when the engineer applied the power to the clutch, the beveled surfaces of wheel and socket were brought into close contact and the friction thus engendered served as a brake on the drum and could be made sufficient to prevent the drum from revolving and thereby to stop completely the descent of the hammer. One of these beveled surfaces was of metal, the other of wood, the latter being called by the witnesses "shoes." An iron block called the hood was carried suspended from the hammer and when a pile was placed in position to be driven the hood was moved down, fitted over its top and detached from the hammer, in order that the hood might receive the direct force of the blows and thereby prevent the top of the pile from being shattered. The hood could not thus be placed until the pile had been set perpendicularly between the leads. In the present instance, its top was leaning

against one of the leads.  Plaintiff climbed to the top of the frame for the purpose of pushing the pile over to its proper place.  He was about fifteen feet from the ground.  Another laborer lower down assisted him and both unavailingly exerted their strength after which plaintiff called to his fellow laborer to hand him a crowbar and squatted down to reach it.  One of his feet stood on a board, the other on an iron pipe.  His footing was somewhat insecure and he placed one of his hands on the top of the pile for support.  At about the time plaintiff called for the crowbar, his fellow laborer gave the signal to the engineer to lower the hammer and hood slowly.  The signal consisted of two blasts of a small steam whistle.  The hammer and hood were suspended some distance above and the drum was being held stationary by the dog.  On receiving the signal, the engineer released the dog and threw enough power on to the friction clutch to produce a slow descent of the hammer.  It started to descend slowly but suddenly the clutch failed to work, the hammer and hood dropped down to the top of the pile and plaintiff's hand was caught and mashed.  Plaintiff claims he did not hear the signal for lowering the hammer, did not know it had been given and, when he placed his hand on the pile, had no idea the hammer would be moved until he had brought the pile into proper place.  It was shown by the evidence of plaintiff that the friction shoes were so worn and defective that their surface could not be brought into proper contact with the opposing surface.  The existence of such defect was denied by the witnesses for defendant.

The charges of negligence pleaded in the petition and submitted to the jury relate, *first,* to the maintenance of worn and defective friction shoes; *second,* to the premature giving of a signal to lower the hammer while plaintiff was in a position of danger; *third,* to the absence from the machine of a safety appliance called a hammer

check or toggle. The machine had been supplied with the latter device which consisted of a wooden bar attached to the leads in such manner that it could be thrown readily under the hammer or hood to bear their weight while at rest and thus relieve the rope and drum from the strain of supporting them. The one provided for this machine had been removed sometime before the injury on account of being out of order.

The answer, in addition to a general denial, contained the plea that the injury was received as the "direct and sole result of plaintiff's carelessness and neglect in placing his hands upon the top and side of said piling mentioned and described in plaintiff's petition and in placing himself in a dangerous and hazardous position unnecessarily and without cause or excuse," and further that "if plaintiff's injuries were the result of the negligent acts of defendant's bellman as alleged in said second count, which allegation defendant expressly denies, then said acts were the acts of plaintiff's fellow-servant and for such acts the defendant is not liable." In the instructions, the three charges of negligence we have mentioned were submitted to the jury as issues of fact, as was also the issue of contributory negligence.

We are of opinion the facts stated justified the trial court in submitting the issues raised by the allegations that the injury was the direct result of the negligence of defendant in operating a machine with defective friction shoes and of the negligence of plaintiff's fellow servant in signalling the engineer to lower the hammer while plaintiff was in a position of danger. Clearly, the latter act cannot be regarded otherwise than as a direct cause of the injury since without the signal, the engineer would not have started the hammer in its descent. It was being held securely at rest by the dog and ratchet and could not be moved until they were released by the engineer. It does not appear why the fel-

low-servant gave the signal, knowing, as he did, that the pile was not in position to receive the hood and that plaintiff was on the frame trying to adjust it, but the jury was entitled to draw the conclusion as one of fact that the conduct of the fellow-servant was negligent and directly contributed to the production of the injury.

The defense that the master cannot be held liable for the tort of a fellow-servant is not open to defendant. Section 2873, Revised Statutes 1899, provides "That every railroad corporation owning or operating a railroad in this State shall be liable for all damages sustained by any agent or servant thereof while engaged in the work of operating such railroad by reason of the negligence of any other agent or servant thereof: Provided, it may be shown in defense that the person injured was guilty of negligence contributing as proximate cause to produce the injury." This section, as construed by the Supreme Court in Callahan v. Railroad, 170 Mo. 473, and in Sams v. Railway, 174 Mo. 53, by this court in Stubbs v. Railway, 85 Mo. App. 192, and by the St. Louis Court of Appeals in Orendorff v. Railroad, 116 Mo. App. 348, applies to the class of service in which plaintiff was engaged. In Callahan v. Railroad, supra, Judge MARSHALL, after exhaustively reviewing the authorities, reached the following conclusion:

"Under the language of our statute it is necessary for the injured employee to show that he was injured 'while engaged in the work of operating such railroad.' Construed either by its own terms or in the light of the cases cited from other jurisdictions, it results in holding that the right to recover is not limited to cases where the injury is inflicted by the negligence of a fellow-servant while actually moving a train or engine, but that the law embraces all cases where the injury is inflicted upon an employee while engaged in the work of operating a railroad, by reason of the negligence of any fellow-servant who is likewise engaged in the work of

operating a railroad, and that the term 'operating such railroad' includes all·work that is directly necessary for running trains over a track, and that it includes section hands who are engaged in working upon, repairing or putting in shape the track, roadbed, bridges, etc., over which the trains must run."

In the present case, the work being prosecuted was that of repairing or reconstructing a bridge over which defendant's track was laid and, under the definition just quoted, it must be regarded as work performed in "operating such railroad."

On the hypothesis, supported by evidence, that the brake shoes were unsafe on account of their worn condition and that defendant had time, in the exercise of reasonable care to have discovered the defect in time to have repaired it by the employment of reasonable diligence, the jury was entitled to draw the further conclusion that defendant was guilty of negligence in failing to remedy that defect. It is the duty of a master to exercise reasonable care to provide his servant with a reasonably safe place in which to work and with reasonably safe tools and appliances with which to work. Or, to state it differently, the master, by negligent acts of omission or commission, must not increase the natural hazards of his servant's employment. That the defect in the brake shoes was a direct cause of the injury indisputably appears from the evidence introduced by plaintiff. After the dog was disengaged from the ratchet wheel, the whole weight of the hammer and hood was thrown on the drum and from it to the friction clutch. But for the defective condition of the shoes, it is fair to presume the clutch would have performed its office, the hammer would have descended slowly and that both plaintiff and the engineer might have been warned in time for the latter to have stopped the descent of the hammer and for the former to have withdrawn his hand from the top of the pile.

Defendant invokes the doctrine of assumption of risk as a defense against liability for the consequences of maintaining the defective shoes. The risks assumed by plaintiff as a part of his contract of employment were those which naturally and incidentally belonged to the business as long as it was conducted by the master within the limits of reasonable care. The additional risks produced by the negligence of the master were not and could not be assumed by the servant, either by express or implied contract. The doctrine of assumption of risk is without application to the facts before us.

Further, it is argued by defendant that we should declare, as a matter of law, that plaintiff himself was guilty of negligence which directly contributed to his injury. We think, under all the circumstances of the case, the question of contributory negligence was an issue of fact. Much stress is laid by both parties on the issue of whether or not plaintiff was experienced in the work of operating a railroad pile driver. But should we concede that he was experienced, as defendant contends, we do not think such fact would greatly aid its position. Whether a skilled or green hand, plaintiff had a right to indulge in the presumption that defendant had performed its duty of master and that his fellow workman would not act negligently in a way to endanger his safety. In other words, he was justified in presuming that the hammer neither would be dropped nor lowered slowly while he was within range of its action. It was for the jury to say whether he was negligent in failing to hear the signal and to withdraw his hand from the top of the pile. This very situation was before the Supreme Judicial Court of Massachusetts in McPhee v. Scully (39 N. E. 1007), where it was said: "The placing of his hand upon the top of the pile, directly in the line of descent of the hammer if it should fall, is the act which defendant contends should charge the plaintiff with contributory negligence. But the fall of the ham-

mer while plaintiff was at his post was not to be expected; and, if it should occur, there was no position in which he could do his work in which safety could be predicated. He had a right to expect that the hammer would not fall, and the jury might find that he was in the exercise of ordinary care." The demurrer to the evidence was properly overruled.

We find that prejudicial error was committed by the learned trial judge in submitting to the jury the issue of whether the injury was caused in whole or in part by the failure of defendant to maintain and use a toggle on the machine. The absence of this appliance did not and could not in any way have contributed to the injury. Its only office was to support the hammer and hood while not in use and thereby to relieve the hoisting and safety appliances from the unnecessary strain of supporting them during periods of inactivity. Had a toggle been employed on this occasion, necessarily its support would have been withdrawn before the hammer began its descent. Its function of holding the hammer and hood stationary was fully performed by the dog and ratchet which, it is admitted, were free from defect. Whether the burden of supporting the weight was borne by one appliance or the other, the support had to be removed in order to menace the safety of plaintiff and the negligent act of causing it to be removed prematurely and the defect in the mechanism for lowering the load were the producing causes of the injury. The negligent act of running the machine without a toggle, if it existed, could not have cooperated with these producing causes and, obviously, could not have been an independent cause. In submitting this issue to the jury the court, in effect, declared that there were facts adduced by evidence from which the jury reasonably might infer that the absence of the toggle had a direct effect in the production of the injury. A declaration of this character which is unsupported by substantial evidence must

be presumed to have had some effect on the minds of the jury and, consequently, to have been prejudicial to the defendant.

Other assignments of error are discussed in the briefs but in what has been said, we have sufficiently disposed of the case. Before it is retried, plaintiff should amend his petition to conform to the views expressed.

The judgment is reversed and the cause remanded. All concur.