JAMES BRISCOE, Respondent, v. CHICAGO, BURLINGTON & QUINCY RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, April 6, 1908.

1. MASTER AND SERVANT: Negligence: Master's Liability: Scope of Employment. To hold the master liable the negligent act of the fellow-servant must pertain to the duties he was employed to perform and the master is not responsible for his voluntary negligent acts beyond the scope of his employment.

2. ———: ———: ———: ———: Evidence. On a review of the evidence relating to the duties of a "truckman" it is held that it was within the scope of his employment to help the "stowman" unload from a truck a heavy load of sheet iron.

3. ———: ———: ———: ———: Pleading: Verdict. A petition is held to charge sufficiently that it was within the duty of a truckman to help the stowman unload the truck under the circumstances in this case, since such duty may be fairly inferred from the facts pleaded in the petition; and the petition should be liberally construed after verdict.

130 App.—33

4. ———: ———: ———: **Assumption of Risk: Fellow-Servant Act.** The servant does not assume risks resulting from negligence of the master, and under the fellow-servant act the negligence of a fellow-servant is the negligence of the master.

5. ———: ———: ———: **Contributory Negligence: Evidence: Jury.** On the evidence the question of contributory negligence was for the jury.

Appeal from Jackson Circuit Court.—*Hon. Edward E. Porterfield,* Judge.

Affirmed.

*Warner, Dean, McLeod & Timmonds* for appellant.

(1) The petition does not state facts sufficient to constitute a cause of action. Plaintiff's right to recover, if any he has, must be based on the Fellow Servant Act. R. S. 1899, sec. 2873. It nowhere appears in the petition that it was any part of the duty of the truckman, or that it was in the line of his employment, to engage in the work of storing goods, or of assisting plaintiff to store them; or that it was any part of his duty, or within the line of his employment, to hold the roofing iron referred to and keep it from falling "while plaintiff was endeavoring to pack the same in said car." Overton v. Railroad, 111 Mo. App. 616; Wood on Master and Servant, 527; Walker v. Railroad, 121 Mo. 584; Marrier v. Railroad, 17 N. W. 952; Snyder v. Railroad, 60 Mo. 413; Sherman v. Railroad, 72 Mo. 63; Cousins v. Railroad, 66 Mo. 575; Stringer v. Railroad, 96 Mo. 299; Duvall v. Packing Co., 119 Mo. App. 150. (2) And the foregoing well-established and well-recognized rule has in no way been modified or affected by the so-called fellow servant act. (R. S. 1899, sec. 2873.) Overton v. Railroad, 111 Mo. App. 613; Bequette v. Railroad, 86 Mo. App. 601; Hamlett v. Railroad, 89 Mo. App. 354. (3) The court committed error in overruling the defendant's demurrer to the evidence. (4) If the plaintiff was injured by reason of O'Neill's negligence, it was while O'Neill was not engaged in the line

of his employment. Wood on Master and Servant, 525, 527; Overton v. Railroad, 111 Mo. App. 613; Walker v. Railroad, 121 Mo. 575; Faber v. Railroad, 32 Mo. App. 378; Snyder v. Railroad, 60 Mo. 413; Duvall v. Packing Co., 119 Mo. App. 150. (5) The evidence shows that plaintiff was guilty of negligence contributing as a proximate cause to produce the injury. (6) Plaintiff's injury was incident to the work in which he was engaged, and he assumed the risk thereof. Haviland v. Railroad, 172 Mo. 106; Kane v. Railroad, 112 Mo. App. 650; Brewing Co. v. Hansen, 91 N. W. 279; Mathis v. Stock Yards, 185 Mo. 449. (7) The evidence fails to show that plaintiff's injury was the result of negligence on the part of defendant's other employee.

*John M. Cleary* for respondent.

(1) The petition states a cause of action. It is unquestionably the law that the master is only liable for injuries inflicted by the servant while acting within the scope of his employment. But in considering the petition in an action of this character, the general rule is that an allegation that the defendant or the defendant's servants did the act in question, or that the defendant by its agents or servants was guilty of the negligent act is held to imply that the act was done about the master's business and within the scope of the servant's employment. Voegeli v. Marble and Granite Co., 49 Mo. App. 653; Todd v. Havlin, 72 Mo. App. 565; Railroad v. Savage, 9 N. E. 85; Lewis v. Schultz, 98 Iowa 345, 67 N. W. 266; Ritchie v. Walker, 63 Conn. 155, 28 Atl. 29, 27 L. R. A. 161; Waters v. Building Co., 52 Minn. 478, 55 N. W. 52; Railroad v. Guyton, 122 Atl. 231, 25 So. 34; Broderick v. Detroit, 56 Mich. 261, 22 N. W. 802; Ephland v. Railroad, 137 Mo. 194. (4) The evidence conclusively shows that plaintiff's injury was the result of the negligence of O'Neill.

JOHNSON, J.—Action by a servant against his master, a railroad company, to recover damages for' personal injuries alleged to have been caused by the negligence of a fellow-servant. Verdict and judgment were for plaintiff in the sum of two thousand dollars, and defendant appealed. The questions presented by defendant in its argument that the judgment should be reversed are comprised in two propositions: First, that the petition does not state a cause of action; second, that the court committed error in overruling defendant's demurrer to the evidence.

Pertinent facts disclosed by the evidence most favorable to plaintiff are as follows: At the time of the injury which occurred in the afternoon of October 7, 1905, plaintiff was in the service of defendant and was engaged at its freight depot in Kansas City in loading and unloading freight cars. He had been employed as a truckman, but on the day in question, was performing the duties of a "stowman" in the loading of a car which had been switched into the depot for that purpose. His place was in the car and his work was to unload freight from trucks brought to him by the truckman and to store it safely and compactly for transportation. Owing to the facts that the body of the car was separated from the floor of the building by a short space and the floor of the car was a few inches higher than the floor of the building, a bridge composed of an iron sheet was used at the entrance of the car. A truckman brought a truck loaded with six or seven bundles of corrugated sheet iron for roofing, and on account of the great weight of the load, was assisted by plaintiff in running the truck over the bridge into the car. Each bundle was bound in the middle by a metal belt and contained a number of sheets, each of which was about eight feet long and three feet wide. The thickness of all the bundles when piled together as they were on the truck was seven or eight inches and their combined weight

was approximately eight hundred pounds. The bundles
were not bound together and might have been unloaded
separately. Plaintiff and the truckman, each holding a
handle, tipped the truck to one side when they reached
the proper place in the car, slid the load sidewise to the
floor, raised it on edge and leaned the top against the
side of the car. Plaintiff stated that when the bundles
were placed in the position described, they were separa-
ted from the wall at one end by a space not over three
or four inches. The car stood north and south. The
load stood against the east wall and rested on the floor
on one of its long edges. Plaintiff was at the south end
and the truckman at the opposite end of the load and
they co-operated to raise it to a perpendicular posi-
tion and lean its top against the wall. Observing that
the bottom of the bundles was too close to the wall to
stand on edge and that when the support was with-
drawn, they would fall over towards the west, plaintiff,
placing his left hand at the top, employed his right hand
to pull the bottom farther away from the wall. While
thus engaged, the truckman, who had been holding the
bundles in position at their north end, suddenly let go
without warning plaintiff whose strength proved inad-
equate to the task of supporting the weight thus thrown
on him and the load fell over on him, breaking one of
his legs. Describing the situation immediately preced-
ing the injury, plaintiff testified, in part, as  follows:
"Q. At the time that you were endeavoring to get
your end out from the wall, were you facing O'Neill
(the truckman) or did you have your back to him? A.
I was kind of facing the side of the car but facing, I
believe, a little sideways like. "Q. Did you see him
let go of this iron? A. I don't think I did see him
just when he let go of it exactly. Q. You don't think
you saw him when he let go? A. No, sir. Q. When you
last saw him, what was he doing, I mean just before the
iron fell on you? A. He jumped back, I think, to get

out of the way of the iron or something. Q. Did you see him have hold of the iron at all? A. I did, before it fell. Q. Where did he have hold of it? A. Close to the end. Q. On the top? A. I think so. Q. Was it then his end leaning against the wall? A. Yes, sir. Q. Was the lower part out farther from the wall than your end, or nearer? A. The end that he was at was out far enough but the end I was at was not—I was working that end out. His end was out far enough, but the end I was at, was not out far enough, so I was working it out at the bottom so that it would lean against the side of the car. Q. In endeavoring to pull your end out did you pull this iron over on you? A. No, sir; I was holding it with one hand and kind of working it out with the other." It is alleged in the petition, "that on October 7, 1905, and for some time prior thereto, plaintiff was in the employ of defendant as a truckman at its freight depot in Kansas City, Missouri, and it became and was his duty to haul freight on trucks from the depot to the cars, from the cars to the depot, and from one car to another; that on the aforesaid day, plaintiff was ordered and instructed by defendant to go into a freight car and store the freight brought in¹ by the truckman in said car; that plaintiff proceeded upon said orders and instructions to store the freight in said car, and while so engaged plaintiff was, with the assistance of an employee of defendant, a truckman, endeavoring to pack away or store a large, heavy bundle of corrugated roofing iron, which weighed about seven hundred pounds, when the said truckman negligently and carelessly caused and permitted said corrugated iron to fall on plaintiff's left leg, breaking both bones thereof and causing a complicated fracture about midway between the knee and ankle. . . . That injuries he received were caused by the negligence and carelessness of said truckman, an employee of defendant, in letting go of said roofing iron while plaintiff

was endeavoring to pack the same in said car, when the said employee of defendant knew, or by the exercise of ordinary care, might have known by letting go of said roofing iron at said time, it was liable to cause plaintiff to be injured." The answer contains a general denial, a plea of contributory negligence and a plea that the injury was the result of a risk assumed by plaintiff as a part of his employment.

The principal objection urged by defendant against the sufficiency of the petition and of the evidence is founded on the claim that "it nowhere appears in the petition that it was any part of the duty of the truckman, or that it was in the line of his employment, to engage in the work of storing the goods or of assisting plaintiff to store them, or that it was any part of his duty, or within the line of his employment to hold the roofing iron referred to and keep it from falling while plaintiff was endeavoring to pack the same in said car." The cause of action asserted is based on the Fellow-Servant Statute (section 2873, Revised Statutes 1899), and it is conceded, in effect, in the brief and argument of defendant that if plaintiff was injured by the negligent act of his fellow-servant, performed in the scope of the employment of the latter and if the negligence and extent of the employment are sufficiently pleaded and proved and the facts in evidence do not establish contributory negligence on the part of plaintiff, or that the injury was the result of one of the natural risks of plaintiff's employment, the act was one for which defendant, under the statute mentioned, would be liable to respond to plaintiff in damages, and the case was properly submitted to the jury in the instructions given.

We think the facts stated are sufficient to sustain the charge of negligence on the part of the truckman and that his negligence was the direct cause of the injury. Whether or not he was acting within the scope of

his duties in assisting plaintiff, he was endeavoring to help him properly to store the load, and no matter how exigent his prescribed duties may have been, he should not have released his support at a time when he must have known plaintiff was in a position of danger. With the load standing on edge, practically perpendicular, not exactly parallel to the wall and composed of thin, heavy and flexible sheets loosely bound in separate bundles, a person of ordinary judgment and prudence in the situation of the truckman should have known that the withdrawal of all support except that given at one end by plaintiff's left hand, would cause the load to start to fall; that plaintiff could not arrest such movement and in all likelihood would be unable to escape injury. But, however remiss the fellow-servant may have been, defendant should not be called to account for his act, unless it was performed within the scope of his duties. The rule is well settled that to hold the master liable, the negligent act of the fellow-servant must pertain to the duties he was employed to perform. If the servant voluntarily performs other duties without the knowledge or consent of the master, though they may be for the master's benefit, the latter is not bound to answer for their injurious consequences to others. As to such acts, the servant is as much a stranger to his master as is any third person. [Overton v. Railway, 111 Mo. App. 613; Walker v. Railroad, 121 Mo. 575; Wood on Master and Servant, sections 525, 527.]

We find in evidence facts from which the inference fairly arises that the truckman was in the performance of the service for which he was employed. It is true, as defendant contends, that the "stowman" belonged to a higher class of workmen than the truckman and received higher wages and that generally it was the duty of the truckman to leave his loaded truck in the car for the stowman to unload and at once to return to the check clerk for further orders; but, fur-

ther, it appears that when a load consisted of an article or articles too heavy for the "stowman" to handle alone, it was the duty of the truckman to help him. Plaintiff testified:

"Q. He was doing whatever you asked him to? A. He was supposed to . . . . Q. Now after this corrugated iron was brought into the car, then it was handled according to your directions, as stowman you were in control then, after it got into the car? A. I asked the man to help me, the truckman, in a case of that kind." The truckman testified: "Q. You push a truck—a loaded truck—to the door of the car to the stower and leave it loaded, and while he is unloading that truck, the truckman takes the empty truck and goes after another load? A. You are supposed to aid him if the load is too heavy for the man to handle himself." Where the extent of a given employment is made the subject of substantial controversy in the evidence, it becomes an issue of fact for the jury. The testimony just quoted, if accepted by the jury, could lead to no other conclusion than that the truckman was in the discharge of his duties when he attempted to aid plaintiff in the work of storing a load of seven hundred or eight hundred pounds.

The evidence being sufficient to support plaintiff on these issues, we are of opinion the petition also is sufficient. The fact that the truckman was acting within his employment is not expressly alleged and that fact is constitutive, but its existence may be inferred fairly from the other facts pleaded and, since no demurrer to the petition was interposed, the doctrine that the petition should be liberally construed after the verdict for the plaintiff applies and cures the defect.

We do not give our sanction to the contention of defendant that the injury was the result of a risk assumed by plaintiff. In recent years, it has been decided repeatedly by the courts of last resort in this

State that the servant does not assume the risks produced by the master's negligence.   Under the Fellow Servant Act, the negligence of the fellow-servant is the negligence of the master.   Plaintiff did not assume the risks caused by the negligence of the one or the other.

Finally, it is urged that plaintiff was guilty in law of contributory negligence because he did not unload the bundles separately.   His evidence shows that he was required by defendant to work with expedition; that he selected the quickest as well as the usual method of doing the work, and that such method was reasonably safe if employed with ordinary care.   We cannot say, as a matter of law, that the method suggested by defendant would have been safer than that followed by plaintiff.   Certainly, he should not be held negligent for doing the work in the manner required by the master, provided that manner was reasonably safe, though not the safest that might have been selected.   Under all the circumstances, the conduct of plaintiff was an issue of fact to be solved by the jury.

Finding no error in the record, the judgment is affirmed.   All concur.