ELIZABETH PRATT, Administratrix of the Estate of ALBERT PRATT, Deceased, Respondent, v. THE MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, November 15, 1909.

1. RAILROADS: Master and Servant: Fellow-Servant. Where the death of an employee of a railroad engaged as a brakeman on a loaded coal car while being shunted from a main switch track in a terminal yard to a side track, was caused by the negligence of a fellow-servant in the moving of cars and the giving of signals, the defendant is liable in damages under section 2864, Revised Statutes 1899, as amended by laws 1905, page 135.

2. ———: ———: ———. Such interpretation should be given the fellow-servant statute as will best realize the purposes of the Legislature and afford protection to the employees of railroads working in dangerous positions and exposed to unusual hazards incident to a service in which their personal safety is jeopardized by the carelessness of numerous other employees over whom they have no control.

3. ———: Wrongful Death: Damages. Section 2864, Revised Statutes 1899, as amended by Laws 1905, making a railroad liable for the death of an employee by the negligence of a fellow-servant and providing that damages shall be paid in a sum not less than $2,000 nor more than $10,000 as a penalty, such remedy must be imposed by the jury as a penalty and not as compensatory damages and the age and earning capacity of the decedent are proper subjects for the consideration of the jury.

4. ———: Master and Servant: Proximate Cause. A brakeman while switching a car to a side track was killed by said car coming in contact with a car on the main track left there by another brakeman without a light and without notifying a fellow-brakeman charged with the duty of signaling the engineer. Held, that the negligence of the brakeman in leaving his car without a light and without notifying the fellow-workman thereof was the proximate cause of the accident.

Appeal from Jackson Circuit Court.—Hon. Thos. J. Seehorn, Judge.

AFFIRMED.

*Elijah Robinson & Harrison Robinson* for appellant.

*Noyes & Heath* and *G. L. Walls* for respondent.

JOHNSON, J.—This suit is prosecuted by the administratrix of the estate of Albert H. Pratt, deceased, to recover damages for the death of the decedent which the petition alleges was caused by the negligence of the defendant. The answer admits that Pratt was killed at the time and place alleged but denies the other allegations of the petition and contains pleas of assumed risk and contributory negligence. Verdict and judgment were for plaintiff in the sum of $4,500. Defendant appealed.

The injuries from which the unfortunate man died, in a few hours, were received about 8:30 o'clock p. m. March 5, 1906, in the terminal yards of defendant at Kansas City. Pratt was a switchman in the service of defendant and was engaged at the time as brakeman on a loaded coal car that was being shunted from a main switch track to a side track. The yards where the switching was being done was what is called a gravity or "hump" yard. The tracks consisted of a main lead running east and west and twenty-five or more switch tracks diverging at intervals therefrom. Some of these switch tracks ran in a southwesterly, and others in a northeasterly direction from the lead track. In approaching this yard from the east as it was necessary to do in distributing a string of cars, the ground had been elevated in order that the end car, when detached from the train would run by gravity to the place where it was to stop on a switch track. Switchmen were stationed in the yard to throw the necessary switches and there is evidence to the effect that it was the duty of the engineer not to detach and send a car forward ex-

cept on signal from the switchman, and that the signals should not be given except when the car had a clear track ahead. A brakeman was stationed on each car sent forward for the purpose of controlling the progress of the car to the place where it should stop. It was sleeting at the time of the injury, the night was very dark and the rails were slippery. Some cars had been "kicked" forward and the last one, an empty furniture car, for some reasons had not passed on to its side track but had stopped on and had "fouled" the main lead. The brakeman of that car had left it, taking his lantern with him, and had gone to a small fire in the yard, probably to warm himself. At any rate, the car was standing without any light on it when the next car was sent forward some five or ten minutes later. We are dealing now with the controverted facts and are stating the evidence most favorable to the cause of action. Pratt was the brakeman on the car last mentioned which, as we have said, was a loaded coal car. He was at the brake and with the aid of a brake stick was attending to his duty of controlling the progress of the car which was running from four to five miles an hour. On account of the darkness and the sleet striking his face, he could see but a short distance. Evidently he did not see the furniture car or know of its presence on the lead track until it was too late to avoid a collision. It was the purpose to run his car on the lead track to a switch beyond the place where the furniture car was stalled. As the car ran along, a switchman muttered a warning cry and Pratt was observed to be setting the brake. The coal car crashed into the furniture car with much violence, Pratt was thrown to the track, and the wheels of the coal car ran over him. There is evidence that the engineer before shunting the coal car received a go ahead signal from a switchman in the yard, and that Pratt tested his brake before the car was started and found it in good working order. And further it

appears that neither the engineer nor Pratt received any signal to the effect that the main lead was fouled.

Acts of defendant alleged to be negligent, and of the commission of which we find substantial evidence, thus may be summarized:

First: The furniture car was stopped on the main lead in a position to endanger the safety of the brakeman on the following car by the negligent manner in which the brakeman set the brakes. (There is evidence that the brakes of the furniture car were set very hard.)

Second: Whether or not the fouling of the main lead was attributable to negligence, the car was negligently left standing without a light on it to give warning of the obstruction.

Third: The switchman whose duty it was to signal the engineer knew, or by the exercise of ordinary care should have known, that the lead was fouled in time to have prevented the coal car from being "kicked" down the incline, but negligently failed to warn the engineer not to send the car forward.

In the argument of defendant on the proposition that the demurrer to the evidence should have been sustained, the point is urged that the evidence does not accuse the defendant of any negligence that was the proximate cause of the injury, and that the injury should be considered as an unfortunate result of a mere accident? We regard this position as untenable. "The rule is that when an accident proceeds from an act of such character that when due care is taken in its performance no injury ordinarily ensues from it in similar cases, it will be presumed to be negligent." [Shuler v. Railway, 87 Mo. App. 618.]

It is a fair inference from all the facts and circumstances in evidence that the furniture car did not stop on the main lead on account of insufficient impetus to carry it to its proper destination, but because of the act of the brakeman in setting the brake too hard. And though it may be said with reason that this act could

have been the result of a mere mistake in judgment induced mainly by unfavorable weather conditions and not of negligence, we think it would be difficult to exculpate him from the charge of negligence in deserting the car without leaving a light on it and without calling the attention of the switchman, whose duty it was to signal to the engineer, to the fact that he had left an obstruction on the track. That negligence should be considered as a proximate cause of the injury, regardless of whether or not the switchman had actual notice of the obstruction in time to give a saving warning; for if the brakeman had remained on his car, or at least had left his lantern there, he might, and doubtless would, have saved the life of his fellow workman. Because of the darkness and storm he left a concealed pitfall. He could not do this and act with a degree of care and humanity to be expected of the ordinarily careful and humane person in his situation. And, further, if the switchman knew of the obstruction in time, by the exercise of reasonable care, to prevent the coal car from being sent forward or to give Pratt a lantern signal to stop when the car might have been stopped before it reached the obstruction (it is reasonable to infer from the evidence that both, or at least the last mentioned of these signals, could have been given), his failure thus to signal was negligence directly productive of the injury. We think it is clear that the evidence tends to inculpate both the furniture car brakeman and the signalling switchman and to point to their negligence as proximate causes.

There is no room in this case for the application of the doctrine of assumed risk. The natural and inherent dangers of Pratt's calling were very great and he assumed risk of injury from them as a part of his contract of employment. But he did not assume risks created by the negligence of his master, nor, as we shall show, did he assume risks created by the negligence of his fellow-servants.

Nor can we agree with defendant that Pratt was guilty in law of contributory negligence.   The signal given the engineer and the fact that the engineer "kicked" his car forward assured him that the way was clear. It was his duty not to rely blindly on such assurance, but to make reasonable use of his senses to protect his safety.   But considering all the facts of his situation— the deep darkness, the blinding storm, and the attention he would naturally give the regulating the speed of the car—we say it was for the jury to pass on the issue of whether or not he could have seen the car in time to avoid the collision.   In answer to the argument that he might have dropped off the car or climbed back on it for safety, we say it would be a harsh and unjust rule that would accuse a man of negligence in law on account of his actions under stress of sudden, imminent and fearsome danger.   The man stood at his post and we shall not say he failed in the performance of his highest duty.   That was a question for the jury.

Since the injury, according to the evidence of the plaintiff, was caused by the negligence of fellow-servants of Pratt, it goes without saying that such negligence would afford no cause of action against the defendant at common law, and we must turn to the statute to ascertain whether the Legislature has provided a remedy in cases of this character.

The action is based on section 2864, Revised Statutes 1899, as amended in 1905 (Laws of 1905, p. 136). That section provides that "Whenever any person including an employee . . . shall die from any injury resulting or occasioned by negligence, unskillfulness, or criminal intent of any officer, agent, servant or employee, whilst running, conducting or managing any locomotive, car or train of cars, or any street, electric or terminal or train of cars . . . the corporation shall forfeit and pay as a penalty, etc."

Defendant makes the point that the death of Pratt "was not caused by any negligence, unskillfulness, or

criminal intent of any officer, agent, servant or employee, whilst running or conducting any locomotive car or train of cars."

We think the cause of action asserted falls squarely within the purview of the statute. It is conceded Pratt was an employee of defendant engaged in its service at the time of the injury, and we have shown that his death was caused by negligence of his co-employees. That this negligence was in the performance of the duty of moving a car or a train of cars is a proposition about which there can be no reasonable difference of opinion. It is immaterial that the train was being operated in a terminal yard instead of upon a highway. It was a train of cars in operation nevertheless. The language of the statute expressed a clear legislative intent to cover the operation of cars and trains at terminals as well as of trains on the road. The principal rule of construction to be applied to this statute is the same that governs the construction of the section commonly called the Fellow-Servant Statute (sec. 2873, R. S. 1899.) "Laws of this kind are of a remedial nature and such an interpretation is and ought to be given to them as will best realize the purpose of the Legislature to afford employees of the railroad companies, who work in dangerous positions and are exposed to the unusual hazards incident to a service in which their personal safety is jeopardized by the carelessness of numerous other employees over whom they have no control and whose habits of work, in respect to being careful or careless, they have but slight chance to observe, redress for their injuries sustained by the default of such other employees, unrestricted by the common law doctrine in regard to injuries caused by the acts of fellow-servants. Hence, attention is paid rather to the humane spirit of the law than to its exact words." [Rice v. Railway, 92 Mo. App. l. c. 38; Stubbs v. Railway, 85 Mo. App. 192; Shuler v. Railway, supra; Huston v. Rail-

road, 129 Mo. App. 576; Briscoe v. Railroad, 130 Mo. App. 513; Callahan v. Railway, 170 Mo. l. c. 495.]

We approve what was said in the foregoing quotation and though we find the action before us within the strict letter of the statute, we take this occasion to declare that full efficacy must be given to the humane spirit and intent of the law.

Of the legal capacity of the administratrix to sue there can be no question. Pratt was a man of mature age, unmarried and childless. The administratrix was his mother and dependent on him for support. The statute (section 2864) as amended in 1905, provides: "If there be no husband, wife, minor child or minor children, natural born or adopted . . . then in such case suit may be instituted and recovery had by the administratrix or executor of the deceased," etc.

The demurrer to the evidence was properly overruled.

Point is made that the court erred in excluding from the evidence a book kept by defendant which showed the names of the employees who were working at the scene of the accident. The purpose of the offer was to prove that one of plaintiff's important witnesses who testified that he was at work in the yard at the time of the injury had given false testimony. The time slips or tickets made in the yard by the employee whose duty it was to keep the time of the employees were offered by defendant and admitted in evidence. The record book was a mere compilation of these slips.

The following excerpt from the opinion of Judge LAMM in Sharp v. Railway, 213 Mo. 517, disposes of this point adversely to the contention of defendant: "The primary evidence obviously was the testimony of the inspector himself and his tally book made contemporaneously with his inspection. The record offered was a mere after-compilation of these tally books in the nature of a ledger kept for the convenience of defendant. Note the following: There is even no testimony that the copy-

ing was correctly done. There is no excuse offered for the absence of the original memoranda, viz., the tally book and its contents, or for the absence of the evidence of the inspector who made both the inspection and the tally book. In this condition of things it would be dangerously loose practice to permit the introduction of such secondary evidence. We are cited to no well-considered case holding such book admissible on such proof. We take it, its admission would be a novelty in the law, and if we were to allow its exclusion as error we would open the door to grave abuses by such precedent."

But one of the objections of the defendant to the instructions given at the request of the plaintiff is of sufficient merit to call for special notice: That is addressed to the following instruction:

"The court instructs the jury that if you find for the plaintiff, you will assess her damages at a sum not less than two thousand dollars and not exceeding ten thousand dollars, all in the discretion of the jury, and in arriving at the amount the jury may take into consideration the age, physical condition and earning capacity of deceased at the time of his death."

The statute provides that the offending corporation "shall forfeit and pay as a penalty . . . the sum of not less than two thousand dollars and not exceeding ten thousand dollars, in the discretion of the jury." Defendant argues "the language of this statute shows clearly and conclusively that it is a penal statute and that the question of compensation does not enter into the amount of damages which the plaintiff is entitled to recover. That being true, the said instruction No. 12, telling the jury that they should take into consideration the age, earning capacity, etc., of the deceased, was clearly erroneous."

Plaintiff, without objection from defendant, was permitted to examine a witness on matters relating to the earning capacity of the decedent and the dependency of his mother on him for support, and on cross

examination, defendant went into this subject and endeavored to show that Pratt was not industrious, but idled away much of his time. A defendant who is driven to adverse rulings of the court to contest a false issue is not precluded, where he has duly preserved his exceptions, from availing himself, in the appellate courts, of the error forced upon him. But a defendant who voluntarily accepts a false issue tendered by his adversary has no right to complain after he is beaten on ground of his own choosing. Neither party will be suffered to try the case on one theory in the trial court and on another in the appellate court. Defendant, therefore, is in no position to complain that plaintiff was permitted to show the pecuniary value of the life of the decedent to those dependent upon him.

But defendant did object and except to the instruction under consideration and we must assume that the point was made that the remedy was penal and must be awarded as a penalty and not as a compensation for actual damages inflicted. Whether or not the evidence we have noted was improper and should have been excluded had defendant objected to its reception, it became the duty of the court to declare in the instruction the correct rule relating to the remedy, and should we find that an incorrect rule was given, we would hold that the prejudicial error had been committed against the defendant. The rule now prevailing in this State is that such portions of the statute "as confer a remedy are to be liberally construed in advancement of the remedy and such portions of it as impose a penalty are to be strictly construed in order that the penalty shall be sustained and the statute shall be operative and in full force to the end that the mischief which it seeks to prevent and punish shall be abated or minimized." [Casey v. Transit Co., 116 Mo. App. l. c. 249; same case, 205 Mo. 721.]

The remedy must be imposed by the jury as a penalty not as a compensatory damage. But the statute

in its present form does not fix the exact amount of the penalty but leaves a wide range for the jury to exercise discretion. Between the limits of two thousand dollars and ten thousand dollars the jury is given room for the expression of its convictions concerning the amount of the penalty that should be imposed. The very fact that the Legislature invested the jury with the right of exercising a discretion makes pertinent all of the facts and circumstances of the case that are necessary to be known in order that the discretion may be wisely and not foolishly or capriciously exercised. Not only is it essential that the jury should know the nature of the culpable act which gave rise to the cause of action but also should they know the kind of man who met his death by the negligence of the defendant. The age and earning capacity of the decedent were proper subjects of investigation and it was not error to instruct the jury to take such facts into consideration. The instruction does not tell the jury to award plaintiff compensatory damages. It directs them to assess the damages at a sum not less than two thousand dollars and not exceeding ten thousand dollars "all in the discretion of the jury." While it does not use the word "penalty," it does fix arbitrary bounds to the verdict without reference to the question of whether actual compensation for the damages incurred would lie in those bounds. In doing this, the instruction sufficiently expressed the idea that the assessment of damages was to be treated by the jury as the imposition of a penalty. If defendant desired a more specific instruction, it should have asked it. We find no substantial error in the record and accordingly the judgment is affirmed. All concur.