CATHERINE PETERS, Respondent, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

Springfield Court of Appeals, November 10, 1910.

1. **NEGLIGENCE: Death by Wrongful Act: Operation of Cars.** Plaintiff's husband, a car repairer, was killed by being struck by a number of telegraph poles which fell from a car as it was being moved on one of the tracks. In moving the car, the men in charge of loading it with poles, used bars which they put under the wheels and "pinched" the car along. *Held,* that the act of moving the car in this manner brought it within the provision and intention of section 5425, Revised Statutes 1909, and if the act was negligent and was the cause of the fatal injury to plaintiff's husband, she could recover under this statute.

2. ———: ———: ———: ———. Section 5425, Revised Statutes 1909, was intended to cover all cases where the employee was killed by the negligent act in moving cars of any character used on the railroad tracks, and regardless of the question whether the car at the time of the injury was being propelled by steam, electricity, horse power, or even by means of pinch bars, or by pushing the same by hand.

3. ———: **Contractor: Master and Servant.** The general rule is, that one who has contracted with a competent and proper person, exercising an independent employment to do a piece of work not in itself unlawful, or of such a nature that it is not likely to become a nuisance, nor to subject third persons to unusual danger, according to the contractor's own methods, and without being subject to control, except as to the result of his work, will not be answerable for the wrongs of such contractor or his servants committed in the prosecution of the work.

150 App.—46

4. **CONTRACTOR: Master and Servant: Negligence.** One who contracts to do a specific piece of work, furnishing his own assistants, and executing the work, either entirely in accordance with his own ideas, or in accordance with the plan previously given to him, and without being subject to orders in respect to the details of the work, is an independent contractor and not a servant.

5. **CORPORATIONS: Contractor: Master and Servant: Delegation of Chartered Privileges.** As an exception to the rule that a person is not answerable for the wrongs of an independent contractor, or his servants, it is held that a corporation cannot delegate its chartered rights, privileges and franchises, by contracting with another to exercise them, and thereby relieve itself from liability for the negligence of the contractor's servants while attempting to exercise such chartered rights.

6. ——: ——: ——: ——: **Common Carriers.** Defendant, a corporation, was a common carrier, and while transporting a carload of poles, found it necessary to transfer the poles to another car, because of defects in the first car. They employed an independent contractor to make this change. Held, that the corporation could not delegate to an independent contractor the work of transporting the freight so as not to be personally responsible for the conduct of such contractor, and his servants, in doing the work, and that in doing such work the contractor was the carrier's "agent" within the meaning of the word as used in section 5425, Revised Statutes 1909.

7. **PRINCIPAL AND AGENT: Definition of Agent.** The word "agent" is one of wide signification. It is defined to be one who acts for another by authority from him; one who undertakes to transact some business or manage some affairs for another by authority and on account of the latter, and render an account of it. The term "agent" may therefore be said to apply to any one, who, by authority, performs an act for another.

8. **DEATH BY WRONGFUL ACT: Negligence: Operation of Cars: Statutes Distinguished: Pleading.** The right of action given under section 5425, Revised Statutes 1909, is not that given under sections 5426 and 5427, and that given under the last two sections is not the one given under the former. The actions may be joined in the same petition, but when so joined they should be stated in separate counts.

9. ——: ——: ——: ——: **Instructions.** Plaintiff's decedent was killed by being struck by a number of poles, which fell from a car that was being moved along the track. Held, that if the poles had been carelessly loaded, and on account

thereof, fell on deceased and killed him, the right of action would have existed under section 5426, Revised Statutes 1909, and that it was error for the court to submit in an instruction covering a cause of action under section 5425, the question of negligence in the loading of the poles on the car. .

10. **RES ADJUDICATA: Appeal and Error: Pleading: Stating Same Cause of Action in Two Counts.** Plaintiff's petition was in two counts; one based on section 5425, and the other on section 5426, Revised Statutes 1909. *Held*, that there was but one cause of action and that it was proper to tell the jury that if they found for the plaintiff on one count, to find for the defendant on the other; but where on defendant's appeal the judgment for plaintiff is reversed and the cause remanded, plaintiff is not precluded from having another trial on the count on which the jury found for the defendant upon a retrial of the issues on the first count.

Appeal from City of St. Louis Circuit Court.—*Hon. Robert M. Foster,* Judge.

REVERSED AND REMANDED.

*W. F. Evans* and *Jones, Jones, Hocker & Davis* for appellant.

(1) The court erred in refusing to give defendant's instruction in the nature of a demurrer to the evidence as to the first count of plaintiff's petition. Strottman v. Railroad, 211 Mo. 227; Gayle v. Foundry Co., 177 Mo. 427. (2) The court erred in refusing to give defendant's instruction in the nature of a demurrer to the evidence as to the second count of plaintiff's petition.

*R. M. Nichols* for respondent.

(1) Prying the car along on the switch track was "running, conducting or managing" the car, within the meaning of the Act of 1905, designated as section 2864, and the falling of the telegraph poles upon the deceased, due to insufficiently securing the load upon the car, while said car was being thus run, conducted

or managed, gave the plaintiff a cause of action under said act. Pratt v. Railroad, 122 S. W. 1125; McKenzie v. Railroad, 216 Mo. 1; Aley v. Railroad, 211 Mo. 460; Casey v. Transit Co., 205 Mo. 721; King v. Railroad, 130 Mo. App. 368; Anderson v. Railroad, 196 Mo. 442; Callahan v. Railway, 170 Mo. 473; Stubbs v. Railroad, 85 Mo. App. 192; Orendorff v. Railroad, 116 Mo. App. 348; Huston v. Railroad, 129 Mo. App. 576; Turner v. Railroad, 132 Mo. App. 238. (2) The plaintiff's deceased husband, as a car repairer, and the men in charge of the car, loading it, were not under a common master, were not fellow-servants, and therefore plaintiff could recover in her second count, which states a cause of action under section 2865, for failure of defendant to furnish her husband a safe place in which to work. Moore v. Railroad, 85 Mo. 588; Hope v. Railroad, 88 Mo. 360; Tabler v. Railroad, 93 Mo. 79; Steel Co. v. Zienkowski, 220 Ill. 324, 77 N. E. 190. (3) Plaintiff had a right to state her cause of action under sections 2864 and 2865 in different counts in the same petition, and to go to the jury upon both counts. Lancaster v. Insurance Co., 92 Mo. 468; Cramer v. Barman, 193 Mo. 327; Casey v. Transit Co., 205 Mo. 721; McKenzie v. Railway Co., 216 Mo. 1; Akers v. Bank, 63 Mo. App. 320; Leu v. Transit Co., 110 Mo. App. 458; Shearer & Martin v. Hill, 125 Mo. App. 383. (4) The railway company owed the deceased the duty not to render unsafe the place provided in which to work at his employment, and this duty could not be delegated to an independent contractor, thereby avoiding responsibility. Morton v. Dry Goods Co., 126 Mo. App. 377; Sachenritz v. Biscuit Co., 78 Mo. App. 144; Burs v. Railroad, 129 Mo. 41; Hardler v. Buck, 136 Mo. 3; Curtis v. McNair, 173 Mo. 280; Chariton v. Railroad, 200 Mo. 434. (5) It is the settled law that a railroad company cannot, by any form of agreement, whether it be made with another company, or with an individual, relieve itself from responsibility for the non-perform-

ance of the duties which are incident to the discharge of its functions as a common carrier. Speed v. Railroad, 71 Mo. 309; Railroad v. Hahn, 118 Pa. 561, 12 Atl. 474; note to Anderson v. Fleming, 66 L. R. A. 119; 26 Cyc. 1564; Boucher v. Railroad, 13 L. R. A. 1177, and note; 1 Thompson on Negligence, secs. 636, 669, 672.

GRAY, J.—The plaintiff instituted this suit in the circuit court of the City of St. Louis, March 15, 1907, to recover damages from defendant on account of the death of William W. Peters, husband of plaintiff. Peters, who was a car repairer in the employ of defendant, on January 8, 1907, while walking between two tracks in the yards of the defendant in said city, was killed by being struck by a number of telegraph poles which fell from a car being moved on one of the tracks. The poles had been taken from a car that had become out of order, and loaded on another car, for the purpose of being carried to their destination.

The testimony tends to prove that a crew of men were at work transferring the poles from the defective car, and in performing this work, the poles were taken from the defective car and rolled on skids to the other car. Stakes had been put on the side of the car opposite from where the loading was being done, and the poles had been loaded against the stakes on that side of the car until they showed signs of the load against them. When all the poles but five had been loaded, the skids were so steep that it was difficult to load any more by hand. The men then attempted to move the car down the track a few feet to where there was a derrick that they could use in loading the remaining poles. In moving the car they used bars which they put under the wheels and "pinched" the car along. When the car had been moved about ten feet, some of the standards on the loaded side gave way and the poles fell off and upon the deceased, who was passing along the track at that point, and he was killed thereby.

The plaintiff offered testimony tending to prove that in moving the cars loaded with telegraph poles the standards are secured either by nailing boards across from one to the other, or by wires. But the witnesses testified that this was not done until the car had been finally loaded and ready for shipment. The only evidence as to the character and strength of the standards, showed that they were of the usual size and ordinary strength used for such purposes, and that they gave no indications of being defective, and were in fact the same ones used in hauling the poles into the yards.

The petition is in two counts. The first, under section 5425, Revised Statutes 1909, and the second under section 5426 of said statutes. On the trial before a jury, a verdict was rendered in favor of the plaintiff on the first count, in the sum of seven thousand dollars, and in favor of the defendant on the second count. The defendant appealed from the judgment subsequently rendered on the verdict.

The first count of the petition alleges the relationship of the parties, and that it was the duty of the deceased to work in and about the yards of the defendant, and upon the sides of its tracks where cars might be located requiring repairs; that it was the duty of the defendant to furnish the deceased a safe place in which to perform his work, and to maintain appliances upon its cars of sufficient strength to support loads placed thereon, and it was also the duty of the defendant to load and handle freight upon said cars in a proper and secure way, and that it was the further duty of the defendant, its servants and employees to run, conduct and manage its car or cars over its said road and switches so that the place and places provided for its employees in which to work, would not be rendered dangerous; that the defendant disregarding said duties, carelessly loaded one of its cars upon its track in its yard, with large poles; that said poles were by the de-

fendant, or its agents, servants and employees, negligently and carelessly piled upon said car and against the standards upon one side of said car, to such a. height and without securing the same, that the said standards were not sufficiently strong to withstand the weight or pressure of said poles, and that said defendant, its agents, servants and employees carelessly, recklessly and unskillfully moved, run, conducted or managed said car upon which said poles had been so negligently, carelessly and unskillfully piled, as aforesaid, by means of levers, pries or instruments known as pinch bars, and that said prying or pinching of said car caused the same to shake or rock and increase the pressure on said standards so that the said standards gave way and broke, and the poles fell upon the plaintiff's husband and killed him, to her damage in the sum of ten thousand dollars.

The second count charges the relation of the parties, as in the first, and that it was the duty of the defendant to exercise reasonable care to furnish the deceased a safe place to work. But the defendant, in disregard of its duty, carelessly and negligently piled the telegraph poles upon one side of its car and against the standards, and without in any manner securing or bracing the same, so that said standards were not sufficiently strong to withstand the weight and gave way and fell upon plaintiff's husband and killed him.

The answer is a general denial, and also a special defense alleging that the death of plaintiff's husband, if caused by the negligence of any one, was caused by the negligence of an independent contractor, who at the time was engaged in moving the poles referred to in plaintiff's petition from one car to another.

The defendant maintains that plaintiff's cause of action is not given by section 5425. This is one of the material points in this case. In Casey v. Transit Co., 205 Mo. 721, 103 S. W. 1146, our court said: "The right of action given in section 2864 (now section 5425) is for

a death caused by the negligence of the servant operating the defendant's instrument of transportation, whether it be a locomotive, car, train of cars, steamboat, its machinery, stage coach or other public conveyance, while the right of action given in the two sections next following is for a death caused by the negligence of the defendant, which may mean his own negligence, as for instance, in furnishing an unsafe vehicle, or it may mean his negligence through his servant in some particular other than the particular specified in said section.''

And in Higgins v. Railroad, 197 Mo. l. c. 312, 95 S. W. 863, the court said: ''To our mind the purpose of this statute was to allow damages for the negligent acts of the servants managing, running and controlling public conveyances.''

The appellant's petition is that loading a car with freight and pinching the same down the track by means of bars when it is necessary to remove the same a few feet to facilitate the loading thereof, is not ''an act of an agent, servant or employee whilst running, conducting or managing any locomotive, car or train of cars,'' etc.

The plaintiff relies on the case of Orendorff v. Railroad, 116 Mo. App. 348, 92 S. W. 148, and cases therein cited. The action in that case was under section 2873 of the Revised Statutes 1899, and the difference between that section and the one now under consideration is apparent. That section reads: ''Every railroad corporation owning or operating a railroad in this state shall be liable for all damages sustained by any agent or servant thereof while engaged in the work of operating such railroad by reason of the negligence of any other agent or servant thereof.'' Our court holds that the words ''while engaged in the work of operating such railroad,'' applies to all work connected with the operation of the railroad. The section now under consideration is not nearly so broad and is limited to acts per-

formed whilst running, conducting or managing any locomotive, car or train of cars, and fixes its own penalty in a sum of not less than two, nor more than ten thousand dollars.

Statutes of this kind are of a remedial nature, and in their interpretation courts should keep in view the purpose of the Legislature in enacting them. The statute in question was enacted because the Legislature was not satisfied with the common law rule as it formerly existed, or as changed by the statutes then in force, and the law was enacted to afford redress to employees of railroad companies who are exposed to the unusual hazards incident to a service in which their personal safety is jeopardized by the carelessness of other employees. Rice v. Wabash R. Co., 92 Mo. App. 35, wherein Goode, J., said: "Attention is paid rather to the humane spirit of the law than to its exact words; and a construction is put on it which brings within its remedial efficacy all employees whose duties require them to travel on cars along the tracks of the railroad, whether these duties pertain to the actual business of transporting persons and property or only to keeping the tracks, rolling stock and other appliances in good condition so that the company's transportation business can be safely and efficiently conducted."

We have not been able to find a statute in the exact language of ours in any other state, and neither has our Supreme Court or either of our courts of appeals, applied the statute to a state of facts similar to the ones in the present case. In Iowa, Kansas, Minnesota, Wisconsin, Texas, Alabama and Indiana, similar statutes are found, and yet the wording of many of them is so different from our section 5425 that decisions under them do not decide the question now presented.

The Iowa statute reads: "Every corporation operating a railroad shall be liable for all damages sustained by any person, including employes of such corporation, in consequence of the neglect of agents, or

by any mismanagement of the engineers or other employees of the corporation, when such injuries are, in any manner, connected with the use and operation of any railroad, on or about which they shall be employed." And the court of that state held that while the statute should be limited to employees engaged in the hazardous business of operating a railroad, it nevertheless, included an employee engaged in connection with a dirt train, and who was injured while loading a car by the falling of an impending bank. [Deppe v. Railroad, 36 Ia. 52.]

In McKnight v. Iowa & Minnesota Construction Co., 43 Ia. 406, the plaintiff was working for a construction company that was building a railroad under a contract with the railroad company, and at the time of plaintiff's injury the construction company was running trains laden with gravel which was being hauled from the gravel pit to the end of the road, and there used in constructing a roadbed. While the train was stopped for the purpose of unloading, and while plaintiff was shovelling gravel, he was injured by the train suddenly starting and throwing him from the car on which he was working. The court said: "The defendant was not operating the railroad in the sense of doing the business for which it was designed, the carrying of passengers and freight. There is a marked difference between the general management of the business and finances of a railroad, and the running of a special train over it in repairing or constructing it by a company which does not control it. If we were to throw out of consideration the spirit and object of the statute and look only to a critical construction of its language, we might concede that it would bear the meaning which appellant would put upon it. The running of a special train over a railroad is operating it in some restricted sense. For such purpose, as well as in the general business of the road, a number of persons must be employed, each dependent for his safety

upon the skill and fidelity of the others. We are of the opinion, therefore, that the running of special trains over a railroad by a construction company in constructing it, is operating the railroad within the meaning of our statute.''

In Fransden v. Railroad, 36 Ia. 372, the plaintiff was a section hand, and with his boss and three others, started with the handcar on the track to a point where they were going to work. While the car was thus proceeding around a curve the men suddenly discovered a train approaching from the opposite direction. The men stopped the car and attempted to remove the same from the track, but before they were able to do so, the engine of the approaching train struck the handcar, threw it in the direction of plaintiff and injured him. It was held that the plaintiff's employment related to the perilous business of railroading, and entitled him to the benefit of the statute.

In Akeson v. Railroad, 75 N. W. 676, the Supreme Court of Iowa reviewed the many decisions of that state, and a conclusion reached as follows: ''The peculiarity of the railroad business, which distinguishes it from any other, is the movement of vehicles or machinery of great weight on the track by steam or other power, and the dangers incident to such movement are those the statute was intended to guard against. If, then, the injury is received by an employee whose work exposes him to the hazards of moving trains, cars, engines or machinery on the track, and is caused by the negligence of a co-employee in the actual movement thereof, or in any manner directly connected therewith, the statute applies, and a recovery may be had. The purpose of the lawmakers was evidently not to make men, because employed by railroad companies, favorites of the law, but to afford protection owing to the peculiar hazards of their situation.''

Without reviewing the Minnesota cases, it is sufficient to say they hold if, there was any substantial ele-

ment of hazard or condition of danger which contributed to the injury, and which is peculiar to the railroad business, the statute applies. [Nichols v. Ry. Co., 62 N. W. 386; Leier v. Transfer Co., 65 N. W. 269; Blomquist v. Ry. Co., 67 N. W. 804.] And the rule in that state is, that the test is not whether the conditions are in any respect parallel to those to be found in some other kind of business, or whether the appliances are in any respect similar to those used in any other kind of business, if there is any element of hazard or condition of danger which contributed to the injury, and which is peculiar to the railroad business, the statute applies. [Nichols v. Ry., supra.]

The Kansas statute reads: "Every railroad company organized or doing business in this state, shall be liable for all damages done to any employee of such company, in consequence of any negligence of its agents, or by any mismanagement of its engineers, or other employees, to any person sustaining such damages." The courts of that state hold that injuries received in the operation of a handcar are within the provisions of the statute. [Union Trust Co. v. Thomason, 25 Kan. 3.]

In Alabama, the statute is as follows: "When such injury is caused by reason of the negligence of any person in the service or employment of the master or employer who has the charge or control of any signal points, locomotive, engine, switch, car, or train upon a railway," and the court holds that the language embraced a handcar. [Kansas City M. B. R. Co. v. Crocker, 95 Ala 412, 11 So. 262.]

In Wisconsin, the statutory provision reads: "Every railroad or railway company operating any railroad or railway, the line of which shall be in whole or in part within this state, shall be liable for all damages sustained within this state, by any employee of such company while engaged in operating, running, riding upon or switching passenger or freight or other

trains, engines, or cars." The court held the statute broad enough to include a handcar. [Benson v. Chicago R. R., 77 N. W. 798.]

In the Benson case, the court uses the following language: "There is nothing in the, statute requiring that the car be connected with a locomotive, or with other cars forming a train, or that it must be made to be propelled by any particular kind of power, in order to bring a case within its operation. We do not think that the fact that the word 'cars' is enumerated with 'trains' and 'engines' restricts its meaning to cars propelled by engines, or to cars usually operated as part of a train."

The Texas statute, like the Wisconsin statute, is similar to ours, and reads as follows: "Every person operating a railroad or railway, shall be liable for all damages sustained by any servant or employee thereof, while engaged in the work of operating the cars, locomotives or trains of such person, by reason of the negligence of any other servant or employee," and the courts hold that a handcar is within that statute; and also that a pushcar is within its provisions. [Railway v. Bailey, 115 S. W. 601; Texarkana & Ft. Ry. Co. v. Anderson, 111 S. W. 173; Seery v. Railway Co., 77 S. W. 950; Railroad v. Hervey, 89 S. W. 1095; Railway v. Smith, 99 S. W. 743; Railway v. Jennings, 81 S. W. 822.]

Our statute is broader than the statutes of any of the above named states, as it contains the following sweeping language: "Whenever any person, including an employee of the corporation, whose death is caused by the negligence of a co-employee thereof, shall die from any injury resulting or occasioned by the negligence or unskillfulness or criminal intent of any officer, agent, servant or employee, whilst running, conducting or managing any locomotive, car or train of cars, or any street, electric or terminal car or train of cars, or of any master, pilot, engineer, agent or em-

ployee whilst running, conducting or managing any steamboat, or any of the machinery thereof, or of any driver of any stage coach, automobile, motor car or other public conveyance, whilst in the charge of the same as a driver."

It seems to us that the statute was intended to cover all cases where the employee was killed by the negligent act in moving cars of any character used on the railroad tracks, and regardless of the question whether the car at the time of the injury was being propelled by steam, electric, horse power, or even by means of pinch bars, or by pushing the same by hand.

In this case, suppose instead of using pinch bars to move the car down the track, an engine had been used, it would not be contended that the act was not the running of a car within the meaning of the statute.

Our views are supported by the decisions of the Supreme Court of this state in construing section 2873, Revised Statutes 1899. [Callahan v. Mer. Bridge Terminal Ry. Co., 170 Mo. 473, 71 S. W. 208.] And in giving the section now under consideration the construction we have, we are supported by the decision of the Kansas City Court of Appeals in Pratt v. Railroad, 139 Mo. App. 502, 122 S. W. 1125, and the St. Louis Court of Appeals, in King v. Railroad, 130 Mo. App 368, 109 S. W. 859.

The authorities on the question are collected in the notes to Bradford Construction Co. v. Heflin, 12 L. R. A., N. S. 1040; Hanson v. Railroad, 22 L. R. A., N. S. 968; Givens v. Southern Railroad, 22 L. R. A., N. S. 971; Johnson v. Great Northern Ry. Co., 18 L. R. A., N. S. 477. And we believe our views are supported by the weight of authority as reviewed in those cases.

The defendant offered to prove that for many years it had been the custom of the company not to transfer the freight itself, but to make contracts with other persons to transfer the same wherever there was

any freight to be transferred, and that such persons so transferring the freight did so with their own instrumentalities, with their own men, and in their own way, without any supervision or control by the defendant as to the means and methods of doing the work; and that the only inspection made by the company was to see that the work had been properly performed; and that one Oscar Haskell, under a contract with the defendant, had for many years been engaged in transferring freight for the company under such contract; that he was a thoroughly capable and skillful man for the purpose, and that his work had always been satisfactory, and that he was moving the carload of poles from the bad order car to the car from which they fell, under a contract which made him an independent contractor. This request the court refused, and the action of the court is assigned as error.

The general rule is, that one who has contracted with a competent and proper person, exercising an independent employment, to do a piece of work not in itself unlawful, or of such a nature that it is likely to become a nuisance, or to subject third persons to unusual danger, according to the contractor's own methods, and without being subject to control, except as to the result of his work, will not be answerable for the wrongs of such contractor or his servants committed in the prosecution of the work. [Thompson on Negligence, section 621.]

One who contracts to do a specific piece of work, furnish his own assistants, in executing the work, either entirely in accordance with his own ideas, or in accordance with the plan previously given to him, and without being subject to the orders of the latter in respect to the details of the work, is an independent contractor and not a servant. [26 Cyc. 970.]

As an exception to the above rule, and supported by the weight of authority, a corporation cannot delegate its chartered rights, privileges and franchises,

by contracting with another to exercise them, and thereby relieve itself from liability for the negligence of the contractor's servants while attempting to exercise such chartered rights, privileges and franchises. [Thompson on Negligence, secs. 669, 670 and 672; Chicago, etc., R. R. Co. v. McCarthy, 71 Am. Dec. 285; White v. The People's Ry. Co., 72 Atl. 1059; Lowell v. Boston Ry. Co., 34 Am. Dec. 33; Stephenville, etc., R. R. Co. v. Couch, 121 S. W. 189; Sanford v. Pawtucket St. Ry. Co., 33 L. R. A. 564; Vickers v. Kanawha & West Va. R. R. Co., 63 S. E. 367, 20 L. R. A., N. S. 793.]

The appellant at the time complained of was a common carrier, and was engaged in transporting the carload of poles as freight. While the poles were in transit, the car on which they were being carried became defective and it was necessary to change them to another car in order to carry them to their destination. In carrying the freight from the point where it was received to its destination, the appellant was exercising its duty as a common carrier under its franchise privileges granted to it by the state. Under the above authorities, which we hold correctly declare the law, the corporation could not delegate the work of transporting the freight to an independent contractor so as not to be personally responsible for the conduct of such contractor in doing the work.

The appellant, however, claims that section 5425 does not give a right of action in cases where the death was caused by the negligent act of an independent contractor. The statute does give a cause of action where the death resulted from the negligent act of the "agent" of the corporation whilst conducting, managing or operating the car, etc. The question is: Does the word "agent" as used in the section include an independent contractor?

The word "agent" is one of wide signification. It is defined to be one who acts for another by authority

from him; one who undertakes to transact some business or manage same affairs for another by authority and on account of the latter, and render an account of it. The term "agent" may, therefore, be said to apply to any one, who, by authority, performs an act for another. [Words and Phrases, vol. 1, page 262, and authorities there cited.]

In Chicago, St. Paul, etc., R. R. Co. v. McCarthy, 20 Ill. 385, 71 Am. Dec. 285, the contractor in the construction of a railroad committed certain tortious acts, and the question arose whether he was an agent of the railroad company having the work done. The court said: "The contractors have no right there, except through the grant to the company, and of course, are the servants and agents of the company in doing that particular work."

In Gardner v. Smith, 7 Mich. 410, 71 Am. Dec. 722, in construing the statutes reading: "Until fences shall be duly erected, the corporation and their agents shall be liable for all damages which shall be done by their agents or engines to cattle, horses or other animals thereon," the court held that a contractor who in doing certain work for the company, left the fences down, was an agent of the company within the meaning of the statute, and in so doing said: "We think Gardner was an agent within the letter and spirit of the act. It was evidently intended to embrace, under the denomination of agent, every one in the employment of the company. The word is to be taken in an enlarged sense to include those who exercise the power of the company upon or over the road, as well as those active in, or connected with the commission of the injury."

In Clement v. Canfield, 28 Vermont, 303, a lessee of a railroad in possession, was held to be an agent within the meaning of a statute similar to the one just quoted.

In Sanford v. Street Ry. Co., 33 L. R. A. 564, the rule is recognized that in the performance of the franchise duties and rights of a railroad corporation, the work of the independent contractor is really the work of the corporation itself.

In Vickers v. Kanawha R. R. Co., 63 S. E. 367, 20 L. R. A. N. S. 793, it is held, that where a railroad company intrusts performance of any of its positive duties to its servants to an independent contractor, his relationship to the defendant becomes that of vice principal, and his negligent performance of those duties becomes notice to his principal, rendering it liable for injuries to its servants, resulting therefrom.

In the recent case of White v. People's Ry. Co., 72 Alt. 1059, the court held: "That a street railway company constructing an electric railway on a street by virtue of a franchise granted to it, is liable for injuries resulting from the negligence of an independent contractor doing the work, or his servants, and that in performing the work, the contractor was the agent of the company."

We are inclined to hold on these authorities and under the evidence in this case, that the contractor transferring the freight from one car to the other, was the agent of the appellant, discharging appellant's franchise duties, and that his negligence should be held the negligence of an "agent" as that word is used in section 5425.

At the request of the respondent, the court instructed the jury as follows: "The jury are instructed that if they believe from the evidence that on, to-wit, January 8, 1907, William W. Peters, deceased, was in the employ of the defendant in the capacity of car repairer or carpenter, and that on said date he was, in the discharge of his duty, passing along the side of a car loaded with telegraph poles in charge of the employees of the defendant, and that said employees had carelessly and unskillfully loaded said car by

placing the said telegraph poles upon the side thereof and against the standards or stays of said car, and that the running or managing of said car by the employees of the defendant, without securing the said standards or stays by means of wire or cross stays so increased the weight of said poles upon said standards or stays so that the standards or stays gave way and the said poles rolled or fell off upon the said William W. Peters, deceased, and that said deceased died from the injuries then and there received, and that his death resulted from the carelessness and negligence of defendant's servants, as aforesaid, which carelessness and negligence by the exercise of reasonable diligence could have been known by defendants, and that the plaintiff herein is his widow, and that this suit was begun within six months after his death, then the jury will find the issues for the plaintiff and assess her damages at a sum not less than two thousand dollars and not exceeding ten thousand dollars.''

It will be noticed that the only place in the instruction where the acts of the employees handling the car are referred to as having been carelessly and unskillfully performed, relates to loading the car and the manner in which the poles were piled against the standards. And by the instruction, though the jury should find that there was no negligence in running or operating the car, yet the defendant was liable if the car had been carelessly and unskillfully loaded.

The right of action given under section 5425 is not that given under sections 5426 and 5427, and that given under the two last named sections is not the one given under the former. [Casey v. Transit Co., 205 Mo. 721, 103 S. W. 1146.] The actions may be joined in the same petition, but when so, they should be stated in separate counts.

In McKenna v. Railroad Co., 54 Mo. App. l. c. 165, in construing this section, the court said: ''Thus the negligence or unskillfulness from which must

arise the liability of defendant, is in running, conducting or managing the train. This statute has no reference to defective tracks or roadbeds."

In several other cases, our courts have held in order to recover under section 5425, the negligent act complained of must have been in the running, managing or operating the train or car. [Crumpley v. Railroad, 98 Mo. 34, 11 S. W. 244; Crohn v. Tel. Co., 131 Mo. App. 313, 109 S. W. 1068; Rapp v. Railroad, 106 Mo. 424, 17 S. W. 487; Anderson v. Railroad, 196 Mo. 1. c. 465, 93 S. W. 394; McMurray v. Railroad, 125 S. W. 751.]

If the load of poles had fallen upon the deceased while no effort was being made to move the car, a right of action would not have accrued under section 5425. But if the poles had been carelessly loaded, and on account thereof, fell upon the deceased and killed him, the right of action would have existed under the succeeding section, and it was error for the court to submit in the first instruction the question of negligence in the loading of the poles on the car. [Casey v. Transit Co., 205 Mo. 721, 103 S. W. 1146.]

There was but one cause of action, and the court was correct in telling the jury if they found for the plaintiff on one count, to find for the defendant on the other, as it would not have been proper for the jury to have found for the plaintiff on both counts and assess damages accordingly.

We are of the opinion, however, that although the jury found for the defendant on the second count and plaintiff took no appeal therefrom, yet under the circumstances, the plaintiff is not precluded from having another trial on the second count of her petition upon a retrial of the issues on the first count.

The premises considered, we will reverse the judgment and remand the cause for trial on both counts of the petition. All concur.