### KREIDER, a minor, etc v
### LEONARD, d.b.a., etc

Ohio Appeals, 9th Dist, Summit Co

No 2209.  Decided Sept 1, 1933

Smoyer, Kennedy, Smoyer & Vogel, Akron, for plaintiff in error.

Slabaugh, Seiberling, Huber & Guinther, Akron, for defendant in error.

## OPINION

By FUNK, J.

At the conclusion of the evidence on behalf of plaintiff, the court, on motion of counsel for Leonard, directed the jury to return a verdict for defendant, on the theory that Hixson was not an agent or employee of Leonard but was an independent contractor.

A large part of the argument in this court revolved about this same question.

However, counsel for plaintiff devote much of their brief to showing that Leonard was a common carrier or "motor transportation company" under §§614-2 and 614-84, GC, as amended in April, 1929 (113 O.L. 482).

Counsel for defendant insist that the question of common carrier is not involved in this case, and that the decision depends entirely upon whether or not Hixson was an employee of Leonard or an independent contractor; and of course claim that the evidence shows that he was an independent contractor.

From the view we take of this case, it is not necessary to determine whether or not Hixson was an employee or an independent contractor.

Under the record herein, there seems to be little doubt but that Leonard, d.b.a. Akron and Buffalo Fast Freight Co., was a "motor transportation company" under the provisions of §§614-2 and 614-84, GC, as amended (113 O.L. 482), which §614-2, GC, under the head of "Definitions," reads in part as follows:

"Any person or persons, firm or firms, co-partnership or voluntary association, joint stock association, company or corporation, wherever organized or incorporated; * * *

"When engaged in the business of carrying and transporting persons or property, or both, or of providing or furnishing such transportation service, for hire, in or by motor propelled vehicles of any kind whatsoever, including trailers for' the public in general, over any public street, road or highway in this state, except as otherwise provided in §614-84, GC is a motor transportation company."

and which §614-84, GC, under the heading "Defining 'motor transportation company'," reads in part as follows:

"The term 'motor transportation company,' when used in this chapter, shall include, and all provisions of law regulating the business of motor transportation, the context thereof notwithstanding, shall apply to, every corporation, company, association, joint stock association, person, firm or co-partnership, their lessees, trustees, receivers or trustees appointed by any court whatsoever, when engaged in the business of transporting persons or property, or both, or of providing or furnishing such transportation service, for hire, for the public in general, in or by motor propelled vehicles of any kind whatsoever, including trailers, over any public highway in this state * * *."

The remaining part of this section pertains to the excluding of certain vehicles from the operation of this statute, such as trucks operated exclusively within a municipality taxicabs, school busses, hotel busses, sight-seeing busses, and vehicles used for private business of the owner.

We call attention to the provisions of §614-99, GC, which were not referred to by counsel on either side. Said section reads in part:

"No certificate of convenience and necessity shall be issued by the commission to any motor transportation company until until such motor transportation company shall have filed with the commission a liability insurance policy or bond satisfactory to the commission in such sum and with such other terms and provisions as the commission may deem necessary adequately to protect the interests of the public having due regard for the number of persons and amount of property affected, which policy, policies or bonds shall insure the motor transportation company against loss sustained by reason of the death of or injuries to persons and for loss of or damage to property resulting from the negligence of such motor transportation company, and shall have filed with the commission a

freight cargo insurance policy or bond adequately to protect the interests of the shipping public, which policy or bond shall insure the motor transportation company against all loss in excess of fifty dollars sustained by reason of any loss or damage to the property being transported. * * *."

It will be observed that this section provides for the protection of the public, as well as the shipper. It is apparent that the legislature intended by this section to protect the public against motor transportation companies employing irresponsible truck owners to do their hauling. We think that but for this §614-99, GC, there would be nothing to prevent an individual or partnership operating as a "motor transportation company," whether owning equipment or not, from employing a truck owner as an independent contractor to haul the property, and thus avoid liability for injury to third persons resulting from collision with such truck.

Although said §614-99 GC does not expressly say that the motor transportation company shall be primarily liable for injuries to the public—to-wit, a third person stranger—for the negligence of its employees, whether servants, agents or independent contractors, it would seem that that is the only reasonable inference to be drawn from the language of the statute, as it provides that no certificate shall be issued to anyone to operate as such company "until" he "shall have filed with the commission a liability insurance policy or bond satisfactory to the commission in such sum and with such other terms and provisions as the commission may deem necessary adequately to protect the interests of the public," etc. Can there be any doubt, judging from the language of this section, but that the legislature intended to make a transportation company primarily liable to third persons for injuries resulting proximately from the negligence of the operator of the truck? And can there be any doubt but that if a motor transportation company, employing a truck owner to haul for it, wants to protect itself from such primary liability when employing an independent contractor, it can do so only by contract with such independent contractor?

The legislature could have required the truck owners or drivers to carry liability insurance, but instead saw fit to require the motor transportation companies to carry such insurance and thereby make them primarily liable for the negligence of the truck drivers.

Counsel for plaintiff cite Express Co. v Backman, 28 Oh St 144, and kindred cases, to show that a common carrier cannot delegate the carrying of goods upon the public highway by a truck, to the truck owner, so as to relieve itself from liability for negligent acts of the operator of the truck.

The Express Co. v Backman case was an action by the shipper against the express company, and has no application to the instant case, except as bearing upon the question of common carrier. While the express company was held to be a common carrier and liable to the shipper under a contractual relation, counsel cite no cases, and we find none, in which an express company was ever held liable for personal injuries resulting from the negligence of an employee of the railroad company which carried the property for the express company. It would thus seem, from the evidence in this case, that, in the absence of said statutes relating to motor transportation companies, the relation of Hixson to Leonard would have been analagous to that of a railroad to an express company.

There seems to be some confusion between counsel as to the right of a common carrier to delegate its responsibilities to some other person, which no doubt grows out of a failure by counsel for plaintiff to distinguish between the rule applicable to the responsibilities which arise as a result of the contractual relationship existing between a carrier and a shipper, and the rule fixing the responsibilities of an individual where an action in tort is brought against him by a third person for damages for personal injuries proximately resulting from the negligence of an independent contractor or his servant or agent; and this confusion also grows out of the failure of counsel for both sides to distinguish between the general rule applicable to an employer where an independent contractor is employed to do certain work, and the fact that the responsibilities of a common carrier corporation, under contracts relating to the exercise of its franchise rights, are exceptions to that general rule.

It is well settled that a carrier cannot delegate, to others, the duties and responsibilities resting upon it under its contract with the shipper. There is also a well recognized rule that a carrier corporation cannot delegate the duties and responsibilities created by the privileges and franchises granted under its charter, by contracting with other persons to exercise such privileges and franchises, and thereby relieve itself from liability for the negligence of

the contractor's servants while they are attempting to exercise such chartered rights, privileges and franchises.

In such cases the duties and responsibilities grow out of contract or special rights and privileges granted by the state to a carrier corporation after certain conditions and considerations have been complied with, and the carrier corporation is thus a creature of law, specially authorized to do certain things, which it is not permitted to delegate to another so as to relieve it from liability for the negligence of such other person or his servants.

Such situations are entirely different from the common law right of an individual to engage in the common carrier business and delegate to an independent contractor the performance of any contract the individual may have, and, while remaining liable to his principal for any failure of the independent contractor to carry out the contract, not be liable for injuries to a third person proximately resulting from the negligence of the independent contractor or his servants in the performance of the contract.

The cases of **Liberty Highway Co. v Callahan,** 24 Oh Ap 378 (4 Abs 380); and **Interstate Motor Freight Corp. v Beecher,** 37 Oh Ap 23, (9 Abs 307), cited by counsel for plaintiff, do not support said counsel's contention, and are not in conflict with our position in the instant case, as it will be observed that the holdings in both of those cases are based upon the fact that the defendants were carrier corporations; and said decisions are accordingly in harmony with the authorities cited: Peters v R. R. Co., 131 SW 917, and 28 A.L.R. 190, part III, §24.

The legislature having defined what constitutes a "motor transportation company" and provided that it can operate only within the privileges granted by the utilities commission, we think that such companies are thus brought substantially within the rule governing carrier corporations, which is an exception to the general rule.

Moreover, it is well known that a truck driver or motor transportation company may be quite irresponsible as compared with a railroad company, and that neither of the former may have little, if any, financial responsibility. The same situation also exists as to the financial responsibility of a motor transportation company that owns no equipment but provides or furnishes transportation of property, as compared with that of an express company. These were no doubt some of the factors consider-

ed by the legislature and which led it to amend said §§614-2 and 614-84, GC, so as to include in the definition of "motor transportation company" one who, although not owning any equipment, **provides or furnish**es such transportation service for hire in or by motor propelled vehicles, as well as one who owns his own equipment and does the hauling himself or by employees, and thereby bring within the provisions of §614-99, GC, such person, firm or corporation providing or furnishing such transportation service and require him or it to provide insurance or bond, the same as the ones who own their own equipment. Such comparative financial irresponsibility of many truck owners and drivers, and persons or firms furnishing or providing transportation service for hire in or by motor propelled vehicles, is also undoubtedly one of the reasons why the legislature provided, by §614-99, GC, that no certificate should be issued to any motor transportation company until such company files with the commission a liability insurance policy or bond satisfactory to the commission, thereby protecting the public against the negligent acts of irresponsible truck owners and their employees.

Where an individual, firm or corporation is providing and furnishing the transportation of property in such manner as would bring him or it within the provisions of the statute, without first obtaining a certificate to so operate, and thus in violation of such statute, it certainly cannot be that such person, firm or corporation would not be liable for the negligence of a truck driver, the same as if he or it had obtained a certificate.

We are of the opinion that, if the jury should find that Leonard had not complied with the law, and was furnishing the transportation of property without a license, and without furnishing liability insurance or a bond, to the satisfaction of the utilities commission, to protect the public, that fact should not relieve him of liability. The very fact that he was operating contrary to law and in violation of the motor vehicle law, without such license and insurance or bond, when he should have had them, would tend towards aggravating rather than relieving him of liability for injury to a third person, if such injury was proximately the result of the negligence of the operator of the truck.

Furthermore, when the issue is raised before the utilities commission as to whether or not a person, firm or corporation is operating as a motor transportation company

or in some other capacity, it is a question of fact to be determined by the commission. N. Y. C. Rd. Co. v P. U. C., 121 Oh St 588.

By analogy in the instant case, when defendant was operating without a certificate, it was a question of fact, to be determined by the jury under proper instruction from the court, whether he was operating as a motor transportation company or in some other capacity.

We therefore hold that, if the jury should find from the evidence, under proper instructions from the court, that the manner in which Leonard was providing transportation of property brought him within the definition of a "motor transportation company," he is liable under the statute, for the injury, although he at the time had no certificate from the utilities commission to operate, if it be proved, by proper evidence, that the injury was the proximate result of the negligence of the operator of the truck, whether he was an independent contractor or an employee of Leonard, and that it was error prejudicial to plaintiff for the court to direct a verdict for defendant.

The following are some of the cases considered, in addition to those hereinbefore referred to:

Hissem v Guran, 112 Oh St 59.

Craig v P. U. C., 115 Oh St 512.

Breuer v P. U. C., 118 Oh St 95.

Klar v Erie R. R., 118 Oh St 612.

Motor Freight v P. U. C., 120 Oh St 1.

N. Y. C. R. R. Co. v P. U. C., 121 Oh St 588.

P. U. C. v Minniear, 123 Oh St 79.

Ry. Express Agy. v P. U. C., 123 Oh St 159.

Sheets & Sons v P. U. C., 124 Oh St 343.

Larkin v P. U. C., 124 Oh St 555.

Motor Freight v P. U. C., 125 Oh St 349, at p. 357.

L. S. Elec. Ry. Co. v P. U. C., 125 Oh St 588.

Judgment reversed, and cause remanded for further proceedings according to law.

STEVENS, J, concurs in judgment.
WASHBURN, PJ, not participating.