DUNCAN, APPELLEE, *v.* EVANS, APPELLANT.

(Decided February 1, 1937.)

*Mr. George A. Cheney,* for appellee.
*Mr. William A. Finn* and *Mr. S. W. Bowman,* for appellant.

CARPENTER, J. About 7:30 p. m., March 25, 1935, a clear evening, two collisions occurred on the highway known as Route 6, four miles west of Bowling Green. That road was improved with tar-bound macadam, about sixteen feet wide. To the north was a berm three feet wide, and to the south, one four feet wide. Near the pavement both berms are gravel and dirt, then grass and beyond the berms are ditches.

The plaintiff Duncan's Auburn automobile, defendant Snyder's Packard automobile and a loaded truck outfit consisting of a tractor and semi-trailer were involved in the collision. The truck was traveling west at a speed of 25 to 30 miles per hour. Duncan was also going west following the truck about one hundred and fifty feet behind it. Snyder was approaching from the west.

Snyder and Duncan both claim the left side of the truck was over on its left side of the pavement. Snyder says that as he attempted to pass the truck, which was about seven and a half or eight feet wide, the tractor part pulled to the right and he missed it, but his automobile struck the left rear of the trailer and was deflected to its left and collided with the front of Duncan's automobile causing Duncan serious injuries. For the damage resulting to him therefrom, he sued both Snyder and the defendant Evans, the latter as being liable for the part the truck played in the situation.

The verdict and judgment were for the plaintiff against both defendants, and both took appeals on questions of law to this court.

As to the operation of the truck, the alleged negligence relied upon was that it was being driven on its left side of the road, and that it was not equipped with

clearance lights on the left side, as required by Rule 8 of the Public Utilities Commission. Evans' answer admits the collisions occurred, that he was a common carrier of freight by truck, the negligence of Snyder as alleged in the amended petition, but denies he was negligent.

There was evidence tending to prove that the truck was being driven on its left side of the road, and that it did not have upon it the clearance lights required by Rule 8 of the commission. That rule, which appeared in the evidence, was:

"Trucks shall display the following lights, on the road side a corner light showing forward on the lower rear corner furtherest out on the road. Red lights on the bottom and at the center and rear of the body."

On the issue of negligence in the operation of the truck and that it caused plaintiff's damages, there was sufficient evidence to sustain the verdict. The assigned error in this respect is not sustained.

Plaintiff's claim that defendant Evans is liable to him for the damage caused him by that negligence rests upon the alternative propositions, either that the driver of the truck was Evans' agent, or, if he was the agent of an independent contractor, he was exercising a special privilege granted to Evans, an interstate common carrier of freight by truck upon the public highways, by the Public Utilities Commission of Ohio, which privilege Evans could not delegate to another and avoid liability to the plaintiff for the negligent acts of the other. This subject will be treated later herein.

The negligence charged against the defendant Snyder was driving at an unreasonable rate of speed, and at such a speed that he could not stop within the assured clear distance ahead; failure to keep a lookout ahead, and to control his automobile; failure to stop or check his speed or change his course so as to avoid collision with the trailer; and driving with defective

lights. Snyder's answer admits that the collisions occured and that Evans was negligent as alleged in the amended petition, but denies he was negligent. Snyder's answer contains the further immaterial, and we think improper, allegations that Duncan's injuries were caused *solely* "by the negligence of Evans and plaintiff." If Snyder's negligence did not cause the damage, it is no concern of his what or who did.

The errors assigned by Snyder are: Refusal to direct a verdict; the judgment is against the weight of the evidence; errors in the charge and refusal to charge as requested after the general charge.

The judgment against Snyder is not against the weight of the evidence, hence the assignments of error as to it and the refusal to direct a verdict are not sustained.

The part of the charge complained of relates to the question of speed. The court read to the jury the "assured clear distance ahead" part of Section 12603, General Code, and said a violation of that provision was negligence *per se*. Snyder claims this provision had no application under the undisputed facts in this case, for the reason that he was traveling on his right side of the road and he had a right to assume the truck would obey the law and yield that side of the road to him. While he claims he did reduce his speed from about forty miles per hour to twenty as he tried to pass the truck, there was evidence that he was driving at fifty miles per hour or more and did not slow down to pass the truck, and that his lights were inadequate.

Snyder testified he saw the truck when he was some distance from it, and when he was "possibly 150 to 200 feet away, possibly 500 or 600 feet" from it, he realized it was over the center of the road, but expected it to turn to the right and clear the south side of the road for him. He said that after he got past the tractor part of the truck "I increased my speed and the back part of the trailer, semi-trailer, caught my left front

wheel and hauled my car around back of the truck and into this car of Mr. Duncan." Did the "assured clear distance ahead" feature of the speed law apply to Snyder in such a situation? If the truck had been standing still in the center of the road that law would have applied. *Gumley, Admr., v. Cowman,* 129 Ohio St., 36, 193 N. E., 627. When he discovered it was in his path, it then became his duty to reduce his speed, and stop if necessary.

If the turn of the truck to the right, as Snyder says, got the tractor only partly out of his way, with the truck going 25 or 30 miles per hour, he took a chance by increasing his speed and trying to get past it. It was not a suddenly presented situation that confronted him. It had been there for some time, and he observed it when he was 150 feet or more from it. Clearly it was for the jury to say whether he violated the "assured clear distance ahead" provision.

Both defendants assign as error the refusal of the court to charge on the subject of contributory negligence when requested to do so at the close of the court's charge. Evidently counsel overlooked the fact that the court did, in the course of the charge in connection with the subject of negligence of each defendant separately, and as to both of them, that is three times, qualify the right of the plaintiff to recover with the instruction that the jury must "find that the plaintiff was not guilty of any negligence directly and proximately contributing to his alleged injuries and damages." Thus the subject was correctly charged, and if counsel desired fuller instruction on it, their request should have been so framed. The record in this respect is free from prejudicial error.

As to the defendant Snyder, we find no prejudicial error in the record.

It was undisputed that Evans held a certificate of convenience and necessity issued by the Public Utilities Commission of Ohio authorizing him to carry on

his business as an interstate common carrier of property over the public highways in Ohio. It was also undisputed that the truck was owned by George Moore and was, at the time of the collision, being driven by a man employed by him; that Moore did not have a certificate to operate as a motor transportation company or a permit as a private carrier in Ohio, and that on the truck was a sign bearing the name and PUCO number of the Spector Motor Service, the carrier by whom Moore had been previously regularly employed, but which had no connection with the load he was hauling at the time of this collision. Under the circumstances, no liability could attach to Spector Motor Service for the wrongful acts of Moore.

During the progress of plaintiff's evidence, counsel for defendant Evans made the following statement to the court and jury:

"I desire to make the statement that the defendant Charles G. Evans, doing business as the Evans Truck Lines or the Evans Refrigerator Service, on and prior to the 25th of March, 1935, made a contract with George Moore to haul a load of yeast from New York to Chicago, Illinois, and paid the said George Moore $138.75 for the hauling of that yeast; that the said yeast was on the truck at the time the collision occurred and was enroute to Chicago pursuant to that contract.

"I will further admit that Charles G. Evans was a common carrier, engaged exclusively in interstate commerce."

The court in the general charge restated this in substance, and told the jury it could consider it "as facts the same as if they had been admitted in the pleadings." No other instructions on the subject of agency were given in the charge. After the jury had deliberated some time, it sent the court the following question:

"In case of carrying a consignment of merchandise

between two parties, which is responsible for the damages done by the carrier, the carrier or the party for whom the goods is being carried?"

The court thereupon further instructed the jury by again restating the admission made by counsel for defendant Evans above quoted, and said:

"Then in that event you are instructed that said defendant Evans, by contracting with said Moore to haul said freight, could not delegate the exercise of the special privilege granted to defendant Evans, to use the public highways of Ohio, and thereby avoid liability to those lawfully upon the highway for injuries resulting proximately by the negligence of Moore."

It is evident the jury's subsequent finding against Evans was based on this instruction. Whether that is a correct statement of the law is the only remaining question for determination herein.

This charge correctly states the rule as recently laid down by this court in *Stickel* v. *Erie Motor Freight, Inc.*, 54 Ohio App., 74, 6 N. E. (2d), 15, in which a motion to certify was overruled by the Supreme Court, October 14, 1936.

In that case the defendant was a corporation authorized by charter to operate as a common carrier of freight in interstate commerce. It also held a certificate from the Public Utilities Commission of Ohio authorizing it to use certain highways in Ohio over which to carry on its business. It is claimed by Evans that he, being an individual, had a right as such to engage in interstate commerce and by making his contract with Moore did not delegate to him any corporate charter franchise duties as did the defendant in the *Stickel case,* and therefore the rule announced in that case is not applicable to Evans.

This court has had before it three cases closely akin to this one. *Liberty Highway Co.* v. *Callahan, Admx.,* 24 Ohio App., 374, 157 N. E., 708; *Interstate Motor Freight Corp.* v. *Beecher,* 37 Ohio App., 23, 174 N. E.,

27, and the *Stickel case, supra.* In all of these, the defendants were corporations doing business as common carriers, and they were held liable to travelers on the highway for injuries resulting from the negligence of the independent contractors who were at the time of the accidents hauling loads for defendants.

Looking closely at the relationship of the carrier to the public in the *Stickel case,* we find it was exercising two special privileges granted it by the public to enable it to carry on its business as a common carrier of freight for hire and profit upon the highways of Ohio. One was its corporate charter, which merely extended to the corporate group the right to do in that respect what an individual could do. The other special privilege was contained in the carrier's certificate from the Public Utilities Commission of Ohio, without which it could not lawfully use the highways in Ohio. The reasoning of the court in that case is very largely addressed to that subject. That reasoning is equally apropos to the case at bar where an individual enjoyed that special privilege. In this respect, the law of Ohio makes no distinction, as was stated in the first paragraph of the syllabus in *Hughes* v. *Ry. Co.,* 39 Ohio St., 461:

"In respect to the liability of an employer, for the negligence or misconduct of an employee, whether agent, servant, or independent contractor, the law makes no distinction between natural persons and corporations."

In the last paragraph of the opinion in that case, on page 477, the court fully expresses its reasons for the conclusion above quoted.

Defendant Evans, although an individual or a "natural person" was a "motor transportation company" (Sections 614-2 and 614-84, General Code) and "a public utility" (Section 614-2a, General Code) within the meaning of the Ohio public utilities law. Section 614-1 *et seq.,* General Code.

In 1921 (109 Ohio Laws, 301), the utilities law was extended to include common carriers by "motor vehicle"; in 1923 (110 Ohio Laws, 211), authority was granted to the Public Utilities Commission of Ohio to provide "for the supervision and regulation" of motor transportation; and in 1933 (115 Ohio Laws, 254, Sections 614-103 to 614-120, General Code), this authority was extended to include "private motor carriers * * * when engaged in the business of private carriage of persons and property" or furnishing such transportation service for hire.

An examination of this law and its development in Ohio indicates that one of the important legislative purposes is to safeguard and protect the public upon the highway against the fast increasing hazards to it from the use of the highways by motor transportation for hire and profit as a business.

The right of the state, in the exercise of the police power, to supervise and regulate interstate commerce on the highways for the protection of the public is recognized in *Bradley* v. *Public Utilities Commission,* 289 U. S., 92, 77 L. Ed., 1053, 53 S. Ct., 577, and other cases.

From all this it is apparent that by granting to Evans a certificate authorizing him to carry on his business as a common carrier of freight over the highways in Ohio, the state did confer upon him a special privilege, but did so only on condition that, in the exercise of that special privilege, he observe the regulations provided by law and the rules prescribed by the commission, all for the safety and protection of the public in its use of the highways.

In this case, we have a good illustration of the importance of such regulations as Rule 8 of the Public Utilities Commission, which requires clearance lights on a truck engaged in the business of carrying freight upon the highways, and which it is claimed was violated by the driver of the truck in question.

The obvious reasons why Evans cannot accomplish the purpose of his business and escape the liabilities that attend the same by making a contract of carriage with one who does not even hold a permit as a "private motor carrier" with its restrictions are so well pointed out in the *Stickel case, supra,* that they will not be repeated here.

This is no new principle in the law, especially in the law of Ohio. It is one that does not depend upon legislative enactment, but is a part of the settled common law, founded upon public policy.

In *Covington & Cincinnati Bridge Co.* v. *Steinbrock,* 61 Ohio St., 215, 55 N. E., 618, 76 Am. St. Rep., 375, decided in 1899, the Supreme Court was dealing with this principle and in paragraph one of the syllabus expressed it as follows:

"Where danger to others is likely to attend the doing of certain work, unless care is observed, the person having it to do, is under a duty to see that it is done with reasonable care, and cannot, by the employment of an independent contractor, relieve himself from liability for injuries resulting to others from the negligence of the contractor or his servants."

In the opinion, on page 224, the court says:

"The duty need not be imposed by statute, though such is frequently the case. If it be a duty imposed by law, the principle is the same as if required by statute. * * * It arises at law in all cases where more or less danger to others is necessarily incident to the performance of the work let to contract. It is the danger to others incident to the performance of the work let to contract, that raises the duty, and which the employer cannot shift from himself to another, so as to avoid liability, should injury result to another from negligence in doing the work."

In about every common-law jurisdiction where the subject has come to the attention of the courts, carriers have not been permitted to delegate to others, by

contract, their duties so as to escape liability to the shipper or passenger for damages resulting from the negligence of those performing such duties, even though they were independent contractors. To accomplish this end, public policy makes such others the servants of the carrier in its legal relation to the shipper or passenger.

As a proper corollary from this rule, jurisdictions where the subject has been in issue, have extended this rule to railroads in their relation to the public, imposing upon them liability for damages to third persons resulting from the negligent acts of their independent contractors while in the performance of such contract of carriage. This is done because of the hazard to the public necessarily incident to the accomplishment of such contract of carriage by rail. *Peters v. St. L. & S. F. Rd. Co.,* 150 Mo. App., 721, 131 S. W., 917.

There is no difference in object or effect between railroad and motor transportation companies. The purpose of each is commercial, to obtain profit from the public carriage of freight and passengers, either or both, as the case may be. One, except at highway crossings, operates on its own private right of way, the other uses the public highways upon which to conduct its business. As between the two, the danger to the public is the greater from the continuing use by motor transportation companies of the public highways, which were dedicated and intended primarily for the general public travel, without the dangers and hazards incident to the changed use thereof by motor trains of freight or passengers—hence the necessity for increasingly strict regulations. It would seem not only against public policy but contrary to sound judicial judgment to permit evasion of the consequent duties and obligations of a common carrier using the public highways solely by a license privilege from the state, by the subterfuge of employing an independent

contractor. The carriage of freight, by whomsoever actually carried, is the execution and consummation of the privilege granted.

As was done in the *Stickel case, supra*, it is urged here that *Leonard* v. *Kreider*, 128 Ohio St., 267, 190 N. E., 634, is decisive of the issues raised. From an examination of the record and briefs before the Supreme Court in that case, it appears that the Court of Appeals had sought to impose upon a freight broker liability for the acts of an independent contractor by means of Section 614-99, General Code, which requires motor transportation companies to furnish a policy of insurance to protect the public and indemnify the carrier "against loss sustained by reason of the death of or injuries to persons * * * from the negligence of such motor transportation company." The Supreme Court said that statute did not abrogate "the ordinary rules of agency" and that this problem "should be solved by means of clear and definite legislative enactment rather than by questionable judicial inference."

In the *Stickel case*, this court pointed out wherein that case differed from *Leonard* v. *Kreider*. Those differences are present in this case. In addition thereto, we wish to point out particularly that such "clear and definite legislative enactment" has been passed since October 11, 1930, when the transaction occurred on which the Supreme Court decided the *Leonard case*.

In 1933 the Legislature extended the power of the Public Utilities Commission so as to supervise and regulate the operation of "private motor carriers" (Sections 614-103 to 614-120, General Code), and "motor carrier transportation agents" (Sections 614-121 to 614-128, General Code). Before operating, the former must obtain a permit from the commission and the latter a license, and both must furnish bonds for the protection of the public similar to that then and since required of motor transportation companies.

These additions to the motor transportation division of our public utilities law indicate the purpose of the Legislature to protect and secure the public upon the highway against loss from negligence on the part of *any one* using the highway in the conduct of a motor transportation business. Had these laws been in effect in 1930, Leonard, the freight broker, in *Leonard* v. *Kreider,* would have been a "motor carrier transportation agent," and required to conform to that law, while Hixson, his hauler, would have been a "private motor carrier," and as such amenable to that law.

Section 614-103, General Code, defines a "private motor carrier." If Evans' contention is correct that Moore was an independent contractor in hauling the load of yeast for him, then Moore comes squarely within that definition of a private motor carrier. It is conceded that Moore had not qualified as such. Evans must have known that fact. In addition to the usual presumption that he must know the law, he had complied with the Ohio law as a motor transportation company, and certainly was familiar with the Ohio motor transportation law. In fact, he had definite and particular information on the subject. Had Moore sought a permit as a private motor carrier, his application would have had to state the names of the persons with whom he had contracted or proposed to contract, and been accompanied by the affidavits of such persons. Section 614-107, General Code. Or, having qualified, and desiring to contract with another employer, notice of that fact and the affidavit of such proposed employer would have been necessary. Section 614-111, General Code. Certain taxes to the state would have been required of him in all such circumstances. Section 614-112, General Code. In either event, Moore could not have qualified to haul for Evans without his affidavit, which Evans knew he had not furnished.

Without a permit, Moore had no right to operate

in Ohio, as it is claimed he did in this case. Section 614-104, General Code. By doing so he committed a criminal offense, and so did Evans, in procuring him to do so. Section 614-118, General Code.

Moore also violated the rule of the commission then in force which required proper marking of his equipment to show the authority under which he was operating, and in carrying the name and PUCO number of the Spector Motor Service when hauling for Evans. This was a fraud on Spector Motor Service and might easily have gotten it into trouble.

If Evans was confronted with an emergency in the movement of his freight as a common carrier in interstate commerce, he could have met it in a lawful manner by employing Moore as his hauler and placing his name and PUCO number upon Moore's equipment. Had he done that, it would have been necessary for him to have reported that fact to the commission and paid the proper tax on the vehicle. (Section 614-94, General Code, and the rules of the commission then in effect relative thereto, and prescribed under authority of that section of the statutes.) Had Evans thus complied with the law, Moore would have been his agent and employee in this transaction, and there could have been no question about his liability for Moore's negligence.

Sections 614-86 and 614-105, General Code, authorize the Public Utilities Commission to make the rules above referred to and the court is bound to take judicial notice of them. *Boone* v. *State,* 109 Ohio St., 1, 9, 141 N. E., 841; *Industrial Commission* v. *Collela,* 17 Ohio App., 301, 305.

When the acts to be done under the terms of a contract of employment are in violation of specific statutory law, the fact that the employee is an independent contractor does not relieve the employer of liability for negligent acts of the employee in the performance of that contract. 21 A. L. R., 1234.

It cannot be that the law and the courts of Ohio can sanction such a train of lawlessness and tax evasion as would result from sustaining Evans'· contention herein. Such a result would place a premium on lawless evasion of duties and be contrary to the clear and definite purpose of the motor transportation law. It would not be in the interest of either the public or the legitimate law-abiding motor transportation industry. These considerations were not and could not be before the Supreme Court in *Leonard* v. *Kreider, supra.*

In view of this legislation, the common-law principles' expressed in *Covington & Cincinnati Bridge Co.* v. *Steinbrock, supra,* and in *Stickel* v. *Erie Motor Freight, supra,* the instruction given the jury was correct, and finding no prejudicial error in this record, the judgment is affirmed.

*Judgment affirmed.*

TAYLOR and LLOYD, JJ., concur.