DAHL, APPELLEE, *v.* HILLTOP BUILDING MATERIALS, INC., APPELLANT.*

(No. 8136—Decided June 18, 1956.)

*Motion to certify the record overruled, December 12, 1956.

*Messrs. Murphy, Murphy & Deddens* and *Mr. Fred L. Hoffman*, for appellee.

*Messrs. Wise & Brose*, for appellant.

*Per Curiam.* This is an appeal on questions of law from a judgment of the Court of Common Pleas of Hamilton County rendered in conformity to a verdict for plaintiff.

The action was brought to recover for personal injuries and damage to plaintiff's automobile, all the result of a collision between the car of the plaintiff and a concrete-mixer truck, driven by the defendant's employee, which occurred on Wesselman Road in the county of Hamilton on September 4, 1953, at approximately 5 p. m.

The undisputed facts are that a severe rainstorm had occurred shortly before the time of the collision causing the highway to be wet and slippery; that the plaintiff's car and defendant's truck were being driven in opposite directions on such highway in the vicinity of Zion Road; and that at the point of collision a tree, the base of which was some 12 inches in diameter, had fallen across the highway, the top, bare branches extending across the road. A deputy sheriff, Ott, plaintiff's witness, stated that the branches extended ''all the way across the road,'' and that he cut away enough of the branches to permit passage of cars on the west side of the road. According to the plaintiff's testimony, the tree was some 175 feet from a bend in the road north of the tree. The highway has a descending grade from the bend southwardly. When the police arrived on the scene, the rear of the truck, according to witness Ott, was still in the branches, and the right front wheel of the truck was three feet from the ''extreme right side of it''—the road. The road was 18 feet in width. The debris, consisting of dirt and glass, resulting from the collision, according to the evidence of plaintiff, was found to be three feet to the west of the center line of the road. There is no evidence that the truck was moved from the point of impact until after the police arrived on the scene. The truck was what is known as a ''concrete mixer,'' the ''superstructure'' of which is 11 feet high. The truck is 22 feet long and eight feet in width.

The defendant's employee testified, and there is no evidence to dispute his testimony, that when he saw the obstruction in the highway he brought his truck to almost a complete stop, put it in second gear, looked north up the highway, saw nothing approaching from the bend and started to go around the tree. There is no evidence that there was anything to obstruct or lessen vision from the bend in the highway to the tree. The portion of the tree remaining after the officer had removed some of the smaller branches was so large that it was necessary to employ highway equipment to remove it from the highway. The root portion of the tree was located at a considerable elevation above the highway and off the road on the east side.

The plaintiff was driving a 1947 Dodge.

The plaintiff testified:

"A. When I came into Wesselman Road, before I come to Zion Hill Road, it is a righthand curve. It is a curve you cannot overlook. It is going a little downhill. When I came almost around the curve, I seen a big truck coming, but I didn't see that he was on the left side of the street.

"After I realized that he was on the left side of the street, I slowed down, but the truck kept on coming on the left side of the street, so I stepped on my brakes and the collision occurred.

"* * *

"A. When I first saw the truck I would estimate about 175 feet.

"Q. And when was it that you were able to see the truck was on your side of the road? A. Oh, about 75 feet.

"Q. And then what did you do? A. I applied my brake as hard as I could.

"Q. And how fast had you been going before you applied your brakes? A. Oh, I estimate about 25 mile.

"Q. And to what speed did you slow down before the collision took place? A. I don't get you right.

"Q. To what speed had your automobile slowed down before the collision took place? A. Oh, about 10 mile per hour.

"Q. And what part of the truck hit what part of your automobile? A. The left side of the truck hit the left side of my car.

"* * *

"A. Then, I stepped out of the car and seen the whole damage to my car and I was wondering if I was still alive, and I turned around and I seen that truck way up on the road.
"* * *

"Q. Now, this concrete mixer truck, when you saw it, at what speed was it coming? A. Oh, I estimate it was about 35 miles.

"Q. And did it at any time reduce its speed prior to the collision? A. No, I think he increased the speed going up hill.
"* * *

"Q. And how far from the center of the road was the left side of your car immediately prior to the accident? A. About two feet.
"* * *

"Q. Where was this tree that was obstructing half of the road with regard to the truck when you first saw the truck? A. I didn't see no tree.

"Q. Did you at any time, either before or after the collision, see a tree that crossed the road? A. No, no tree, a tree limb, I seen.

"Q. A tree limb. When did you first see that tree limb across the road? A. After the police car came, one deputy sheriff went down and took a limb out of the street.

"Q. He took a limb from the street? A. A limb out of the street, yeah.

"Q. Well, did the deputy sheriff take the entire limb off the road? A. Yeah, it was only a short limb.

"Q. Well, about how short would you say it was? A. Oh, about six feet long.

"Q. About six feet long? A. About six feet in diameter.

"Q. How much in diameter? A. Six inches, pardon me.
"* * *

"Q. Well, did you see the deputy sheriff pick it up? A. Sir?

"Q. Did you see the deputy sheriff pick it up? A. Yeah.

"Q. Do you know which one of the deputies it was who picked it up? A. No, I couldn't say.

"Q. Do you know whether or not he was able to pick it up with one hand or did he have to use both hands? A. No, I wasn't that close.

"Q. What do you say? A. I didn't watch it that close.

"Q. But he did pick it up with his hands? A. Picked it up with his hands and took it out of the street.

"Q. And carried it off the road? A. Yes, sir.

"Q. And what did he do with the portion of the tree that you saw when he carried it off the road? A. I don't understand.

"Q. What did he do with it after he picked it up and carried it off the road? What did the deputy sheriff do with the portion of the tree that he picked up and carried off the road? A. I don't understand the question.

"Mr. Wise: Maybe, Judge, I better go up closer to him.

"Q. What did the deputy sheriff do with that piece of.tree trunk that he picked up off the road? A. Throwed it on the side.

"Q. On the side of the road? A. Yes, sir.

"Q. Now, can you tell me on which side of the road he threw it? A. On the right side.

"Q. On your right? A. No. No. On the right side where you come down, that is the left side from me.

"Q. That is the left side from you and the right side for the truck driver? A. That's right.

"* * *

"Q. When did you first see that the truck was on the left side of the road, on your side of the road? A. Oh, right—right afterwards. I mean about a distance from 125 feet.

"Q. So that the truck was about 125 feet away from you when you saw that it was on your side of the road? A. Right.

"Q. Now, was the truck entirely on your side of the road? A. Yes.

"Q. And from that distance you judged that the truck was going 35 miles an hour? A. Yes, maybe more.

"Q. And you thought that after you first saw the truck it had increased its speed beyond 35 miles an hour? A. Yes, sir.

"Q. Had it started up the grade there that you were going down, when the truck started to increase its speed? Is your answer yes? A. I didn't get that.

"Q. I said had the truck started going up that grade that you were coming down when it began to increase its speed? A. Yes, sir.

"Q. Would you have any idea as to how much it increased its speed beyond your original estimate of 35 miles an hour up to the time it came in contact with your automobile? A. I couldn't say.

"Q. You wouldn't have any idea about that? A. No.

"Q. Now, when you saw this truck on your side of the road, how fast were you going? A. About 25 miles.

"Q. And how fast were you going when you came around the turn, right before you saw the truck at all? A. I don't think I got that.

"Q. How fast were you going as you were coming around the curve, but before you saw the truck? A. 25 miles.

"Q. You were going 25 miles per hour at that time and you were going 25 miles per hour when you first saw the truck? A. That's right.

"Q. Did you, at about that time, apply your brakes? A. No, I slowed down.

"Q. Well, I ask, did you apply your brakes? Did you put your brakes on? A. Yes.

"Q. Was that a foot brake that you put on? A. Yes.

"Q. When did you first put on your foot brake? A. When I realized that he wouldn't turn off.

"Q. Well, when you first saw that he was on your side of the road, I believe earlier on cross-examination, you said that the truck was about 125 feet away from you? A. Right.

"Q. That's right?' A. Yes.

"Q. Did you, when you saw the truck was on your side of the road, put your brake on? A. I slowed down first.

"Q. Well, when you say you slowed down, did you slow down by putting on your brake? A. No.

"Q. How did you slow down? A. Take the gas off; the car slowed down.

"Q. And, then, when did you start to put your brake on? A. When I realized that the truck wouldn't turn over.

"Q. How far away from you was the truck when you put your brake on? A. About 75 feet.

"Q. About 75 feet? A. Right.

"Q. And you slowed down then to about 10 miles an hour? A. Yes, sir.

"Q. Did you have your brakes on as far as you could put them on, or not? A. Yes, sir.

"Q. And did you have your brakes on all the way from the time you applied them when the truck was about 75 feet away up until the time your automobile came in contact with the truck? A. Yes, sir.

"Q. Had your brakes on all the while? A. Yes, sir.

"Q. And your car stayed in the right, on the right side of the road? A. Yes, sir.

"Q. Now, as you approached toward the truck, what, if anything, did you see the truck driver do with the truck? A. I think he tried to turn his wheel.

"Q. Well, did you see the truck turn? A. No, I didn't see nothing.

"Q. It stayed right on the left side of the road, your side of the road? A. Yes.

"Q. Did you see the truck turn at all to the right up until the time you struck it? A. I don't see—it moved a little bit, but I didn't see him turn much.

"Q. When you say you saw the wheel moving a little bit, how much would you say he turned the truck from its path in your side of the road? A. About a foot.

"Q. About a foot? A. Yes.

"Q. Would you say that the right front wheel of the truck was to your left of the center of the road? A. He just was about the center of the line, center of the road.

"Q. The right front wheel? A. The right front wheel.

"Q. And the left front wheel of the truck was over toward your right hand side of the road? A. Right.

"Q. And did the truck stay in that position up until the time your car came in contact with the truck? A. Right.

"Q. And at that time, I think from your previous testimony, your right wheels were about a foot and a half from your right side of the road? A. Right.

"Q. And the left wheels on your car were about two feet from the center line of the road? A. Right.

"Q. Now, what part of your automobile came in contact with what part of the truck? A. The left front, when the truck hit the left side of my car.

"Q. And in what direction did your car go after it came in contact with the truck? A. It stayed straight on the road.

"Q. It stayed straight on the road? A. Yes, sir.

"Q. Did it keep on going down toward Zion Road? A. No, the collision stopped it.

"* * * *

"Q. Now, at the time you regained consciousness, where was your automobile with regard to this part of the tree that you saw the sheriff pick up? A. You mean the distance from there?

"Q. Yes, from your car to the tree? A. About 120 feet.

"Q. About 120 feet? A. That's right.

"Q. It was up in front of you, up in front of your car or behind your car? A. No, in front of my car, yeah.

"Q. In front of your car. That was after you woke up? A. That's right.

"Q. And the police came there? A. Right.

"Q. Was there any other piece of tree trunk in the road besides this piece that you say was 125 feet up ahead of your car? A. No.

"Q. There wasn't any other? A. No.

"* * * *

"Q. Now, after you came around this curve, when you saw the truck, and you applied the brakes, did your car skid any? A. No, sir.

"Q. Was the road wet? A. It was wet.

"Q. Did you have any conversation with the police after they got there? A. No, sir. They only asked me for my driver's license. That is all.

"Q. I will ask you whether the officers who came there asked you what happened or how it happened? A. No.

"Q. Your answer is No? A. No, he never asked me that.

"Q. I will ask you if it isn't a fact that you told the officers at the time they came up that you were unable to stop your car at any time, because of the wet road? A. No.

"Q. You didn't say that? A. No."

Plaintiff's witness Shearer testified:

"Q. I will ask you whether or not he told you he had been unable to stop his car, because of the wet road? A. That's correct, sir."

Now, this statement of the pertinent evidence represents only undisputed, uncontroverted facts, testimony of the plaintiff and testimony of the plaintiff's witnesses. It is unnecessary to specifically point out in detail the incongruities, contradictions and admissions of negligence of the plaintiff, demonstrating his complete disregard for his own safety. Coupling those statements in his testimony with that of his own witness, the deputy sheriff, that he was unable to stop his car because of the wet road, it is clear that the injuries of which the plaintiff complains were caused by his own negligence and a complete disregard of the provisions of the statute requiring him to operate his automobile at such a speed as would permit him to stop within the assured clear distance ahead. His statement that he could not tell from a distance of 175 feet on which side of the center line of the highway a vehicle, 22 feet long, 11 feet high and 8 feet wide, was located, when there was nothing in his path to obstruct his view, comes into violent conflict with what a person of ordinary intelligence knows must be the truth.

The motion of the defendant for a judgment in its favor should have been granted.

The judgment is reversed, and final judgment is entered for the defendant.

*Judgment reversed.*

Ross, P. J., Hildebrant and Matthews, JJ., concur.