CARPENTER, APPELLEE, *v.* McCOURT CONSTRUCTION CO., APPELLANT.*

(No. 4648—Decided March 6, 1957.)

*Mr. Louis A. Berry,* for appellee.
*Messrs. Wise, Roetzel, Maxon, Kelly & Andress,* for appellant.

HUNSICKER, P. J. This is an appeal on questions of law from a judgment in favor of Talmadge Dolen Carpenter, the appellee herein, entered in the Common Pleas Court of Summit County, Ohio, against the appellant herein, McCourt Construction Company.

The parties will be referred to as Carpenter and McCourt.

---

*Motion to certify the record overruled, October 9, 1957,

In the afternoon of August 10, 1953, Carpenter was operating a motorcycle in a northerly direction on state route 241, about three miles north of the village of Greensburg, in Summit County, Ohio. His wife was riding on the rear portion of the double saddle seat with which the motorcycle was equipped.

McCourt was in the process of preparing the road for the purpose of widening the paved portion of the highway an additional two feet. A caravan of McCourt vehicles was proceeding south on the east side of the highway. The lead vehicle was a road grader, traveling at a slow rate of speed.

This road grader was equipped with a blade 11 feet long and 30 inches wide, the left or easterly end of which had a set of teeth that extended below the cutting bar of the blade. These teeth were for the purpose of loosening the soil by a process which the operator called "scar-firing." This grader was a large motor-driven vehicle, approximately 5 feet wide in front, 9 feet wide in the rear, 20 feet long, and over 6 feet high. The driver of the road grader, when in a driving position, standing on the place provided for such operator, was 8 to 9 feet above the ground.

One-way traffic was being maintained on the highway by means of flagmen directing the northerly and southerly flow of traffic. At the time of the occurrence herein, the flagman controlling the northerly flow of traffic was not on the job. Traffic was proceeding south on the west side of the road.

The east side of the road was blocked by the McCourt vehicles. All of such vehicles were north of a crest in the highway, with the lead vehicle, the road grader, being approximately 100 feet north of the crest of the hill. There is considerable conflict in the evidence as to the speed with which the road grader was approaching the crest of the hill, and as to whether it was moving at the time the accident herein took place.

Carpenter testified he was traveling between 40 and 45 miles an hour, two or three car lengths behind a Studebaker sedan automobile, and a foot or two closer to the east edge of the paved portion of the highway than the Studebaker ahead of him. He said that, as he approached the crest of the hill, he saw the red illuminated stop lights of the Studebaker, and noticed this car skid a little to the right, then turn left and pass to the left of the road grader.

Carpenter also testified that: he was 150 to 200 feet from the grader when he first saw it, at which time he could have stopped his motorcycle; the grader was 75 to 100 feet north of the crest of the hill when he first saw it, and he was south of the crest of the hill; when he got to the crest he could see the east side of the road beyond the Studebaker and the grader; he was two car lengths behind the Studebaker when it started to go around the road grader; and when Carpenter started around the grader, the grader was 6 or 7 feet in front of him.

In answer to certain questions, he said:

"Q. Well, anyway, when you saw the lights go on or when you saw the grader you say you applied your brakes, is that right? A. Yes, sir.

"Q. And which way did you turn the motorcycle? A. I continued straight ahead for a while and the Studebaker he went into a skid. He swerved to the right to the eastern edge of the highway in front of me and I continued braking. Then he swerved to the left around the road grader so I seen instead of having—unable to stop before I got to the oncoming grader I thought I would follow suit behind the Studebaker."

Carpenter further testified that he reduced his speed and turned to his left when he saw the road grader (which he said was moving toward him at 5 miles an hour), and struck the right or west portion of the blade that extended beyond the front wheels of this grader.

The impact threw both Mr. and Mrs. Carpenter from the motorcycle, seriously injuring Carpenter and resulting in the almost instant death of Mrs. Carpenter.

Carpenter sued McCourt and recovered a verdict. It is from the judgment on the verdict that McCourt appeals, saying:

"1. On the issues of negligence, contributory negligence, and proximate cause, the court erred:

"A. In overruling defendant's motions (a) for directed verdict at the close of plaintiff's evidence and all the evidence; (b) for judgment notwithstanding the verdict and judgment entered upon said verdict; and (c) in the alternative, for a new trial.

"B. In the general charge to the jury.

"C. In the giving of plaintiff's special request No. 4.

"2. The court erred in refusing defendant's requests for findings of fact.

"3. The court erred in refusing to enter final judgment for defendant, and in the alternative, to grant defendant a new trial."

Our principal question herein concerns the application of the assured-clear-distance-ahead requirements of Section 6307-21 (a), General Code (now Section 4511.21, Revised Code), which was in force at the time of this accident.

Under the circumstances in this case, was there presented an issue of fact, or an issue of law, as to the conduct of Carpenter as he approached the road grader?

The "assured clear distance ahead" rule has received a great deal of attention by the courts since it was first adopted by the Legislature. The act, now Section 4511.21, Revised Code, is identical in that portion dealing with the "assured clear distance" as it was in Section 12603, General Code, and the later section with which we are dealing herein, known as Section 6307-21 (a), General Code.

We think that a case involving this rule may be found in every volume of the Supreme Court reports since the Legislature first adopted the statute. As new situations have arisen, the courts have undertaken to discuss that new situation in the light of the statute and the judicial interpretation thereof.

We have examined many cases in which the rule has been interpreted and applied. These cases say that a sudden and unexpected intervention of a new agency within the assured clear distance ahead affects the application of the statute and may relieve the operator of a vehicle from the charge of negligence per se if he collides with another vehicle or other object in the roadway.

In the case of *Smiley* v. *Arrow Spring Bed Co.*, 138 Ohio St., 81, 33 N. E. (2d), 3, 133 A. L. R., 960, nearly all the cases involving the rule herein, up to the time of the opinion, were discussed. The court there said, at pages 87 and 88:

"Notwithstanding the strict construction given the assured-clear-distance statutes by this court, and by the supreme courts of other states in the cases just cited, this court in the cases of *Gumley, Admr.,* v. *Cowman, supra* [129 Ohio St., 36], *Kormos*

v. *Cleveland Retail Credit Men's Co., supra* [131 Ohio St., 471], and *Hangen* v. *Hadfield,* 135 Ohio St., 281, 20 N. E. (2d), 715, suggested that situations may arise and collisions occur under circumstances which provide legal excuse to the person charged with the violation of the statute. In this connection, however, this court has specifically held that in order to enjoy the benefit of the legal excuse and to avoid the legal imputation of negligence per se, the motorist must establish that, without his fault, and because of circumstances over which he had no control, compliance with the law was rendered impossible. *Hangen* v. *Hadfield, supra.*

"The composite rule then may be stated as follows:

"To comply with the assured-clear-distance-ahead provision of Section 12603, General Code, the driver of a motor vehicle must not operate it at a greater speed than will permit him to bring it to a stop within the distance between his motor vehicle and a discernible object obstructing his path or line of travel, unless such assured clear distance ahead is suddenly cut down or lessened, without his fault, by the entrance within such clear distance ahead and into his path or line of travel of some obstruction which renders him unable, in the exercise of ordinary care, to avoid colliding therewith."

It should be noted that the above statement was made after the case of *Hangen* v. *Hadfield,* 135 Ohio St., 281, 20 N. E. (2d), 715, and such case was cited by Judge Hart in the statement above made.

The situation which arose in the instant case, with respect to the problem confronting the trial judge at the conclusion of plaintiff's case, was similar to that in the case of *Bailey* v. *Holub Iron & Steel Co.,* 29 Ohio Law Abs., 259, wherein Judge Doyle, speaking for this court, said, at page 261:

"These statements of law, considered in connection with the language of the Supreme Court opinions in earlier cases, establish the rule that, where a plaintiff violates the statute and in the trial of the case there is introduced evidence of facts and circumstances which it is contended excuse such violation, and there is a motion at the conclusion of all of the evidence to direct a verdict in favor of the defendant, as was done in this case, it is the duty of the trial court to determine as a matter

of law whether such facts and circumstances, if true, establish that, without the fault of the driver of the car, and because of circumstances over which he had no contral, compliance with the requirement of the statute was rendered impossible. If the court finds that such facts and circumstances, if true, do not constitute such legal excuse, it is the duty of the trial court to direct a verdict for the defendant; but if the trial court finds that such facts and circumstances, if true, constitute a legal excuse, it is then the duty of the trial court to overrule the motion, and submit to the jury the question of the existence of such facts and circumstances, with appropriate charges in reference thereto.''

Does the fact that the road grader was approaching Carpenter at a speed which he designated as five miles an hour (when he first saw the road grader) change the application of a strict construction of the assured-clear-distance rule?

The third paragraph of the syllabus of the *Hangen case.* *supra*, seems to furnish the basis for an excuse to one in a situation such as that in which Carpenter found himself, although in the *Hangen case* the one driving in the opposite direction was doing so in a ''manner contrary to law.'' This seems to be a distinguishing feature in that case. In this case, the road grader was where it had a right to be.

An exhaustive annotation on the subject of ''Negligence of Motorist Colliding with Vehicle Approaching in Wrong Lane'' may be found in 47 A. L. R. (2d), 6, especially Section 15, page 63, and Section 21, page 88. The cases there annotated, however, cover factual situations different from those found in the instant case.

The ''assured clear distance'' rule is stated with a negative approach in *McFadden, Admx.*, v. *Elmer C. Breuer Trans. Co.*, 156 Ohio St., 430, 103 N. E. (2d), 385, wherein the court said:

''1. The question of whether the operator of a motor vehicle was negligent in failing to comply with the 'assured-clear-distance-ahead' rule contained in Section 6307-21, General Code, is not presented to the trier of the facts where there is no substantial evidence (1) that the object with which such operator collided was located ahead of him in his lane of travel, and (2)

that such object was reasonably discernible, and (3) that the object was (a) static or stationary, or (b) moving ahead of him in the same direction as such operator, or (c) came into his lane of travel within the assured clear distance ahead at a point sufficiently distant ahead of him to have made it possible, in the exercise of ordinary care, to bring his vehicle to a stop and avoid a collision.''

Measured by the standard set out in that case, we find by the testimony of the plaintiff, Carpenter, that: (1) the road grader was located ahead of him in his lane of travel; (2) the road grader was reasonably discernible, since he saw it 150 to 200 feet ahead of him; (3) at the time he first saw the grader he could have stopped his motorcycle before colliding therewith.

Carpenter was not confronted with an emergency when he first saw the road grader, although it is true that an emergency did arise when he failed to stop. He said he could have stopped. but he proceeded forward and then turned suddenly to the left when only 6 or 7 feet from the grader and when then traveling at a speed of 15 miles an hour. The emergency herein was thus created by the conduct of Carpenter.

We have been referred to the case of *Duncan* v. *Evans*, 60 Ohio App., 265, 20 N. E. (2d), 729. The court there said, at page 269, with reference to a motor vehicle operator who finds someone in his line of travel: ''When he discovered it was in his path, it then became his duty to reduce his speed, and stop if necessary.'' See also: *Sherer* v. *Smith*, 155 Ohio St., 567, 99 N. E. (2d), 763, and *Winslow* v. *Veterans of Foreign Wars National Home*, 328 Mich., 488, 44 N. W. (2d), 19.

The situation herein is factually similar to that in the case of *Dahl* v. *Hilltop Building Materials, Inc.*, 101 Ohio App., 392, 136 N. E. (2d), 316, wherein the court said:

''In an action to recover damages resulting from a motor vehicle collision, where plaintiff's own testimony contains incongruities, contradictions and admissions of negligence, and his evidence shows clearly that the injuries of which he complains were caused by his own negligence and the complete disregard of the provisions of the assured-clear-distance-ahead statute, the defendant's motion for judgment in his favor should be granted, and final judgment should be entered for defendant.''

From all the circumstances herein and the testimony of Carpenter, we determine that the motion of the defendant for a judgment in its favor, made at the conclusion of all the evidence, should have been granted.

The judgment must be reversed, and final judgment shall be entered for the appellant, McCourt.

Judgment reversed and final judgment rendered.

*Judgment reversed.*

DOYLE and STEVENS, JJ., concur.